IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | | |
|---|---|---|
| DELVELL JOHNSON, et al. | * | |
| Plaintiffs, | * | |
| v. | * | Case No.: 1:09-cv-02391-RDB |
| MIDLAND FUNDING, LLC | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

Defendant, Midland Funding, LLC ("Defendant" or "Midland"), by its undersigned counsel, moves to dismiss the Complaint of Plaintiffs Devell Johnson ("Johnson") and Denise Roarty ("Roarty") pursuant to Fed. R. Civ. P. 12(b) or, in the alternative, moves for summary judgment pursuant to Fed. R. Civ. P. 56.

## I.    INTRODUCTION

Plaintiffs have filed a putative class action against Midland alleging violations of the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. § 14-101, *et seq.*, the Maryland Consumer Protections Act, Md. Code Ann., Com. § 13-101, *et seq.*, Federal Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692a, *et seq.* and alleging a common law claim for unjust enrichment.  Plaintiffs request not only money damages, but also equitable relief in the form of a declaratory judgment and a preliminary and permanent injunction.

Plaintiffs' claims rest on the premise that Midland is a "debt collector" (or "collector" or "collection agency" under the pertinent statutory authority) and transacts business in the state by filing lawsuits against delinquent debtors.   As such, Plaintiffs posit that Midland is required to be licensed or registered in the State of Maryland, and its failure to have such licensure or registration is a violation of the aforementioned statutes.

Plaintiffs' claims fail as a matter of law because Midland is not a "debt collector" or "collector" or "collection agency" and is not required to register or be licensed in Maryland.  This is made clear by the very facts alleged in Plaintiffs' Complaint, as well as the Exhibits to the Complaint.  Accordingly, Plaintiffs' claims should be dismissed for failure to state a claim.  Alternatively, there is no genuine dispute of material fact and, as a matter of law, summary judgment should be entered in favor of Midland.

## II.    <u>LEGAL STANDARDS</u>

A court should dismiss a complaint if the plaintiff fails to proffer "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at  ___, 129 S.Ct. at 1950.  If the well-pleaded facts "do not permit the court to infer more than the *mere possibility* of misconduct," the complaint fails to state a claim.  *Id.* (emphasis added). As this Court is aware, "a complaint must contain

2

'more than labels and conclusions' or a 'formulaic recitation of the elements of a cause of action' in order to survive a motion to dismiss." *Hall v. Baltimore City Police Department*, 2009 WL 3247782 at *2 (D. Md. Oct. 6, 2009).

Alternatively, summary judgment is appropriate against a plaintiff who fails to make a showing sufficient to establish the existence of an element essential to his case and on which he will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-moving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting Fed. R. Civ. P. 56(e)). Failure to demonstrate a genuine issue for trial will result in summary judgment. *Strag v. Bd. of Tr., Craven Cmty. Coll.*, 55 F.3d 943, 951 (4th Cir. 1995). The mere existence of a scintilla of evidence in support of a plaintiff's case is insufficient; there must be evidence on which a jury can reasonably find for the non-moving party. *Anderson*, 477 U.S. at 252.

## III.   PLAINTIFFS' FACTUAL ALLEGATIONS

Plaintiffs each obtained a credit account at some time in the past. *See* Complaint at ¶ 14 and ¶ 43. They do not dispute that they failed to pay and defaulted on their respective accounts. *See* Complaint at ¶16 and ¶45. Based on the allegations in the Complaint, it appears that Plaintiffs are consumers who failed to pay on a consumer debt.

Plaintiffs admit that "Midland's principal business is the purchase and/or servicing of consumer debt that is purchased after default at a substantial discount." Complaint at ¶

3

66.  Plaintiffs do not allege that Midland's principal business is the collection of consumer debts.

As it relates to Plaintiff Johnson, it is alleged that at some point after the default, "Midland acquired the account for a few cents on each dollar or became the servicer of the debt…through a debt buying wholesaler." *See* Complaint at ¶ 17.  Plaintiff Roarty fails to allege when or how Midland became involved with her defaulted account.

The remaining allegations, although phrased as conduct of Midland, deal with actions taken by Mann Bracken, LLP ("Mann Bracken"), a licensed debt collection agency.  *See* **Exhibit 1** (DLLR Financial Regulation Public Query). *See* Complaint at ¶¶ 18, 20-24, 36-42.  Mann Bracken is also a law firm. *See* http://mannbracken.com/main.aspx.  The Exhibits to the Complaint confirm that the complained of action was done by Mann Bracken.  Exhibits 1 and 3 to the Complaint are letters to Plaintiff Johnson from Mann Bracken.  The remaining exhibits are legal pleadings or computer generated documents from the Maryland state courts. Plaintiffs have failed to include the actual complaints or any affidavits.  However, Plaintiffs do allege that Midland, the owner of the debt, was named as plaintiff in lawsuits to pursue the outstanding debts.

The Complaint does not identify the relationship between Midland and Mann Bracken (a non-party to this litigation) other than to say that Midland acted "by and through its attorneys." *See* Complaint at ¶¶ 18, 36, 59.  However, all of the letters attached to the Complaint are on Mann Bracken letterhead. *See* Exhibits 1 and 3 to the Complaint.  The Complaint fails to identify any independent conduct taken by Midland

other than being identified as a plaintiff in a lawsuit.  The Complaint does not allege that

a Midland employee contacted Plaintiffs either verbally or in writing.[1]

There are no allegations that Plaintiff Roarty was contacted in any manner outside

the normal course of litigation. *See* Complaint at ¶¶ 46, 56.

Plaintiffs filed the instant suit on September 10, 2009, seeking declaratory and

injunctive relief, as well as money damages of $10,000,000.00.

## IV.   <u>ARGUMENT</u>

### A. Declaratory and Injunctive Relief.

Plaintiffs' request for a Declaratory Judgment (Count I) and Preliminary and

Permanent Injunctive Relief (Count II) fails on its face as a matter of law.  Courts have

uniformly held that the FDCPA does not authorize equitable or injunctive relief.  *Bolin v.*

*Sears, Roebuck & Co.*, 231 F.3d 970, 977, n 39 (5th Cir. 2000) (collecting cases).  *See*

*also Nott v. Bunson*, 2009 WL 3271285 at *2 (D. Md. Oct. 9, 2009).  Similarly, the

MCDCA specifically allows for an action to be brought for damages, but does not

indicate that equitable relief is an appropriate remedy. *See* Md. Code Ann., Com. Law II

§ 14-203.  Accordingly, this Court should dismiss Counts I and II.

Further, Plaintiffs ask this Court to vacate the decisions and judgments of

Maryland state courts.  This Court does not have jurisdiction to award such relief.  Under

the *Rooker-Feldman* doctrine, "lower federal courts generally do not have subject matter

jurisdiction to review state-court decisions by a state's highest court or its lower courts."

---

[1]      As it relates to Plaintiff Johnson, the Complaint states  that "during 2009, Midland has repeatedly contacted third parties, including Plaintiff's elderly grandmother, and discussed Johnson's alleged debt with third-parties." Complaint at ¶ 42.   However, in light of the fact that the Complaint uses Midland and Mann Bracken interchangeably, it is unclear who Plaintiffs allege contacted third parties.

*Senftle v. Landau*, 390 F. Supp. 2d 463, 468 (D. Md. 2005).  "The doctrine bars a party losing in state court from seeking what in substance would be appellate review of a state judgment in lower federal court, based on the losing party's claim that the state judgment itself violates federal rights." *See id.* (internal citations omitted).  Therefore, not only does the statutory authority not permit such equitable relief, but the Court lacks jurisdiction to engage in such an exercise.

### B.  Maryland Consumer Debt Collection Act ("MCDCA") (Count III) and Maryland Consumer Protection Act ("MCPA") (Count IV).[2]

The MCDCA precludes a "collector" from engaging in certain practices when collecting or attempting to collect a debt. *See* Md. Code Ann., Com. Law II §14-202. Specifically, it "protects consumers against certain threatening and underhanded methods used by debt collectors in attempting to recover on delinquent accounts."  *Spencer v. Henderson-Webb, Inc.*, 81 F. Supp. 2d 582, (D. Md. 1999) (citing to Md. Code Ann., Com. Law II §§14-201-14-204).  A collector is defined as "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction." Md. Code Ann., Com. Law II § 14-201(b). Accordingly, for the MCDCA to apply, Midland must be a collector.

As noted, Plaintiffs have failed to identify any action taken by Midland other than initiating a lawsuit.  In support of Counts III and IV, Plaintiffs set forth numerous conclusory allegations regarding communications or representations purportedly made by Midland that are alleged to have violated the MCDCA and the MCPA. *See* Complaint at

---

[2]    Plaintiffs fail to specifically identify which sections of the MCPA they contend Midland violated. *See* Complaint at ¶¶ 96, 130-137.  Rather, they assert that a violation of the MCDCA is a violation of the MCPA and incorrectly cite to Md. Code Ann., Com. Law II §13-101(14)(iii). *See* Complaint at ¶ 95.

{09476\0\00635119.DOCXv1 }

¶¶ 118-125, 130-137.  The specific facts pertaining to the named plaintiffs reveal no conduct or activities by Midland other than purchasing the debt (for which no violation is alleged) and filing a lawsuit. *See* Complaint at ¶¶29, 54.

Plaintiffs allege that Midland lacked the authority to file lawsuits pursuant to Md. Code Ann., Corps. & Assoc. §§4A-1001(b) and 1007(a). *See* Complaint at ¶¶ 20 and 47. Plaintiffs argue that Midland is required to register as a foreign liability company because it transacts business in Maryland and its failure to register bars its ability to maintain a lawsuit.  Plaintiffs argue that Midland's maintenance of a lawsuit that it could not file because it was not registered is a violation of the MCDCA.  *See* Complaint at 121-122. However, Plaintiffs' argument ignores the statutory authority in that same section that simply maintaining an action or suit <u>does not</u> constitute doing business in the state of Maryland. *See* Md. Code Ann., Corp. & Assoc. § 4A-1009.[3]  Therefore, Plaintiffs' assertion that Midland's failure to register prohibits the initiation of lawsuits is without merit, as is their argument that, in filing such suits, Midland violated the MCDCA and MCPA.

Plaintiffs also allege that Midland is a "collection agency" as defined by Md. Code Ann., Bus. Reg. § 7-101(c)(1)(ii) and is required to be licensed. *See* Complaint at ¶¶ 78-79.  Because Midland is not licensed, Plaintiffs argue that "every collection effort in Maryland by Midland, including each and every civil action filed in Maryland and each and every judgment lien filed in Maryland, is an unfair and deceptive trade practice" in

---

[3]     Interestingly, in the class allegations, Plaintiffs identify §4A-1009 (albeit incorrectly identified in the Commercial Law Article) as authority for its allegation that "Midland does business in Maryland." *See* Complaint at ¶ 70.

7

violation of the MCDCA and the MCPA. *See* Complaint at ¶¶ 80-82. Plaintiffs' argument lacks merit.

A "collection agency" under Maryland law is defined as a person who "engages directly or indirectly in the business of collecting a consumer claim the person owns, if the claim was in default when the person acquired it."  Md. Code Ann., Bus. Reg. § 7-101(c)(1)(ii).  If an entity is a collection agency, it must have a license if it "does business as a collection agency in this State." Md. Code Ann., Bus. Reg. § 7-301 (a).

In addition to the Plaintiffs' complete failure to point to any conduct taken by any Midland employee that could be construed as affirmative collection activity, the Maryland Department of Labor, Licensing and Regulation ("DLLR") has indicated that passive debt buyers, such as Midland, are <u>not</u> required to be licensed. *See* **Exhibit 2**, June 20, 2007 letter from Kelly Mack, Financial Examiner Lead Regulatory Policy Unit, DLLR, sent on behalf of Commissioner Charles W. Turnbaugh (the "Mack Letter").[4] Specifically, the position of the Maryland Collection Agency Licensing Board is as follows:

> This communication will respond to your request for confirmation from the Commissioner that since it is common practice for the "passive debt buyer" to retain a licensed debt collector to directly engage in the collection of its purchased debts, it is the position of the Commissioner that a debt buyer who purchases debts in default, but is not directly engaged in the collection of these purchased debts, is not required to obtain a collection agency license provided that all collection activity performed on behalf of such

---

[4]     This Court is entitled to give weight to, and be persuaded by, the opinion letter from the Maryland Collection Agency Licensing Board.  *See United States v. Mead,* 533 U.S. 218, 234-35 (2001); *Skidmore v. Swift &Co.,* 323 U.S. 134, 140 (1944) .The Maryland Collection Agency Licensing Board enforces the regulations pertaining to collection agencies and has the power to hold hearings for purported violations under the MCDCA. *See* Md. Code Ann., Bus. Reg. § 7-205.

debt buyer is done by a properly licensed collection agency in the State of
Maryland. **Ex. 2.**

The Mack Letter related to the passing of HB 1324 which was signed into law on

May 8, 2007.  The DLLR issued a press release on July 17, 2007 which clarified that a

debt acquirer will be required to be licensed if it is engaged in the business of purchasing

and collecting delinquent debts. *See* **Exhibit 3**, July 17, 2007 Press Release (found at

www.dllr.state.md.us/finance/advisories/advisory07-06.shtml).  Plaintiffs admit that

Midland's "principle business is the purchase and/or servicing of consumer debt that is

purchased after default" (Complaint at ¶ 66). There is no evidence of any affirmative

collection activity on the part of Midland.  Thus, Midland is a "passive debt buyer" and

does not need to be licensed.  *See Kuhne v. Chone & Slamowitz, LLP*¸ 2008 WL 608607

(S.D.N.Y. Mar. 5, 2008) (holding that a debt buyer was not required to be licensed where

it contracted with licensed entities to collect the debt and there was no showing that the

debt buyer had any contact with the public, but was merely a plaintiff in a civil lawsuit).

As Midland is neither a collector nor a collection agency, the MCDCA and the

MCPA are inapplicable and Counts III and IV should be dismissed, or in the alternative,

judgment entered in favor of Midland.

### C.  Fair Debt Collection Practices Act (Count V).

"The Fair Debt Collection Practices Act ("FDCPA") 'safeguards consumers from

abusive and deceptive debt collection practices by debt collectors.'" *Robinson v. TSYS*

*Total Debt Management, Inc.*, 447 F. Supp. 2d 502, 507 (D. Md. 2006) (quoting

*Akalwadi v Risk Management Alternatives*, 336 F. Supp. 2d 492, 511 (D. Md. 2004)).  In

order to establish a *prima facie* case under the FDCPA, "the plaintiff must prove that (1) the defendant was a debt collector; (2) the defendant's conduct in attempting to collect a debt was prohibited by the Act and (3) the debt was a consumer debt." *In re Creditrust Corp.*, 283 B.R. 826, 830 (Bankr. Md. 2002).  Therefore, if Midland is not a "debt collector," then Midland has no liability under the FDCPA.

Midland is not a debt collector.  Rather, as previously discussed, Midland is a passive debt buyer that, by Plaintiffs' own definition regarding its principal business, does not engage in debt collection in the State of Maryland.  A passive debt buyer who does not engage in any collection activities is not a debt collector under the FDCPA.  *See Scally v. Hilco Receivables, LLC.,* 392 F. Supp. 2d 1036, 1040 (N.D. Ill. 2005).  *See also Boccone v. American Express Co.,* 2007 WL 2914909 (D. Md. Oct. 4, 2007) (holding that a defendant that took no collection itself, but rather simply referred debtor's account to collection, was not a debt collector).  Similar to the allegations under the Maryland consumer statutes, Plaintiffs summarily state that Midland is a debt collector and then, as evidence, cite to the activities of a licensed debt collection agency, Mann Bracken.  Plaintiffs' citation to Mann Bracken's activities confirms the fact that Midland outsourced the debt collection activity to Mann Bracken.  Plaintiffs fail to allege any facts that show that Midland directly participated in any of Mann Bracken's debt collection activities.  There are no facts in the Complaint that support direct communication with consumers by

10

Midland; there is no evidence that a Midland employee contacted the Plaintiffs or that a Midland employee mailed any letters.[5]  As a result, there is no basis for direct liability.

Further, there is no factual basis for a claim of liability based on a principal-agent relationship.  "In the absence of special circumstances, a collection agency is an independent contractor." *Spencer v. Henderson-Webb, Inc.*, 81 F. Supp. 2d 582, 596 (D. Md. 1999).  Plaintiffs fail to allege any "special circumstances" supporting interdependence between Midland and Mann Bracken that would render the two entities a "single economic enterprise."  *See Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1142-43 (N.D. Ill. 1998).  As there are no allegations that Midland controlled the conduct of Mann Bracken or the mechanisms of contact, Plaintiffs have failed to establish any sort of principal - agent relationship that could serve as a potential basis for liability.  *See Scally v. Hilco Receivables, LLC.,* 392 F. Supp. 2d 1036, 1040 (N.D. Ill. 2005).

As Midland is not a debt collector, Plaintiffs are unable to establish one of the *prima facie* elements of a claim under the FDCPA.  Accordingly, Count V should be dismissed, or in the alternative, judgment should be entered in favor of Midland.

### D.  Unjust Enrichment (Count VI).

Maryland has defined unjust enrichment as follows:

> [T]he unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience.  A person is enriched if he has received a benefit, and he is unjustly enriched if retention of the benefit would be unjust.  Unjust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another.

---

[5]      Nor could Plaintiffs make such an allegation, consistent with Rule 11.  Midland has no employee who engages in any form of contact with a debtor.  Midland hires licensed debt collectors and law firms to take such actions.

11

*Everhart v. Miles,* 47 Md. App. 131, 136, 422 A.2d 28, 31 (1980) (citations omitted).

Accordingly, the tort of unjust enrichment as three elements:

1. A benefit conferred upon the defendant by the plaintiff;
2. An appreciation or knowledge by the defendant of the benefit; and
3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.

*Sensormatic Sec. Corp. v. Sensormatic Elec. Corp.*, 249 F. Supp. 2d 703, 708 (D. Md. 2003) (citations omitted). *See also Hill v. Cross Country Settlements*, 402 Md. 281, 936 A.2d 343 (2007).

Plaintiffs have failed to plead any specific facts in support of their unjust enrichment claim.  Count VI does nothing more than regurgitate the elements of the tort. Specifically, Plaintiffs allege that "Midland assessed consumer debts, collected payments, and obtained judgments to which they were not entitled by law, which conferred a substantial benefit on Midland." *See* Complaint at ¶ 155.  It should be noted that Midland has not recovered any monies from Plaintiffs Johnson and Roarty and as such, there has been no benefit conferred as required for unjust enrichment.  Therefore, Count VI should be dismissed or, in the alternative, summary judgment should be entered in favor of Midland.

## V.   <u>CONCLUSION</u>

WHEREFORE, Midland respectfully requests that this Court GRANT its Motion to Dismiss for failure to state a claim and dismiss with prejudice Counts I-VI of the Complaint.

{09476\0\00635119.DOCXv1 }

Alternatively, as there is no dispute of material fact, Midland respectfully requests that this Court GRANT its Motion for Summary Judgment and enter judgment in favor of Midland as to Counts I-VI.

Respectfully submitted,

                      /s/ James P. Ulwick

James P. Ulwick        (Bar No. 00536)
Amy E. Askew           (Bar No. 26709)
Kramon & Graham, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
Tel: (410) 752-6030
Fax: (410) 539-1269
e-mail: julwick@kg-law.com
e-mail: aaskew@kg-law.com
*Counsel for Defendant,*
*Midland Funding, LLC*