**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| Delvell Johnson, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | NO. 09-CV-02391-RDB |
| | ) | |
| Midland Funding, LLC. | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR FOR
SUMMARY JUDGMENT
AND
<u>PLAINTIFFS' CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Plaintiffs, Delvell Johnson and Denise Y. Roarty oppose the Motion to Dismiss or, in the Alternative, for Summary Judgment filed by the Defendant. Further, Plaintiffs move pursuant to Rule 56(a) for Partial Summary Judgment against the Defendant. There is no dispute of material fact regarding the Defendant's blatant and indisputable violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., ("FDCPA"), when it acted as a debt collector without the license required under Maryland law, and Plaintiff is entitled to Partial Summary Judgment on the issue of liability as a matter of law.

The Defendant has collected or attempted to collect consumer debts in the State of Maryland when it filed and litigated thousands of debt collection lawsuits in Maryland, even though it has never had the required license to do so. By filing these lawsuits without a license to do so, the Defendant violated the FDCPA. There are no genuine issues of material fact, and Plaintiff is entitled to judgment as a matter of law for the Defendant's violation of the FDCPA. Conversely, the Defendant's Motion to Dismiss should be denied.

In support of his Motion, the Plaintiffs say:

**I.     BACKGROUND**

This case arises from the widespread and organized unlicensed debt collection practices of the Defendant throughout the State of Maryland. The Maryland Department of Labor, Licensing, and Regulation ("DLLR"), the state agency charged with enforcing and interpreting this area of state law by the legislature, recently issued a Cease and Desist Order against this Defendant, and issued the following statement in a Press Release which received national attention:

> "This action sends a clear message to collection agencies nationwide that Maryland will not tolerate unlicensed activities or other debt collection practices that harm Maryland consumers," Secretary Perez said.
>
> The named companies purchase "junk debt" written off by credit card companies and other consumer lenders, for pennies on the dollar. They attempt to collect this old debt by sending letters, making collection calls, and filing court actions against consumers. [The Debt Collectors] were not licensed to engage in collection activities in Maryland, yet had filed over 10,000 collection-related actions in Maryland state courts in the last two years, in violation of the Maryland Collection Agency Licensing Act ["MACLA"].
>
> All of the named companies engaged in systematic violations of both federal and state debt collection laws by refusing to validate the debts when challenged by consumers, even though in some cases the alleged debt was decades old.

**EXHIBIT 1**, DLLR Press Release, "National Collection Agencies Ordered to Stop Activities in Maryland (Sept. 17, 2009) (available at **http://www.dllr.state.md.us/whatsnews/midland.shtml**) (last visited November 23, 2009).

The Defendant entered into an interim settlement with the DLLR. The Defendant agreed to the following key provisions which are material to the issues before this court:

(i)         Midland Funding LLC agreed to apply immediately to the DLLR for a collection agency license pursuant to MCALA; and

(ii) all "open (active) cases in Maryland State district courts and circuit courts…in which Respondent Midland Funding, LLC…is named as a plaintiff" would be stayed to prevent further violation of the MCALA.

See, **EXHIBIT** 2, Interim Settlement Agreement and Modification to Summary Order to Cease and Desist and Summary Suspension of Collection Agency License, ¶ 2 (Action No. DFR-FY-2013-063) (Sept. 16, 2009).

It was also ordered that no further collection actions were permitted by unlicensed collection agencies. *Id.* at Page 5 ("ORDERED that…Respondents may resume collection agency business activities in the State of Maryland in the name of licensed collection agency Midland Credit Management, Inc. only").

Despite these admissions that its unlicensed debt collection activities were improper, and after obtaining an interim settlement with DLLR by making those admissions, the Defendant now comes before this Court and argues that it did not need to hold a license to collect debts through lawsuits. [1]

In a recent lengthy report on consumer debt collection practices, the Federal Trade Commission ("FTC") stated:

> The vast number of debt collection suits filed in recent years has posed considerable challenges to the smooth and efficient operation of courts. The majority of cases on many state court dockets on a given day often are debt collection matters. According to the *Boston Globe*, for example, 60% of the more than 120,000 small claims cases filed in Massachusetts in 2005 were filed by debt collectors. In Chicago's Cook County Circuit Court, according to press reports, more than 119,000 civil lawsuits against alleged debtors were pending as of June 2008. At that time, some 12,000 such suits were

---

[1] Plaintiffs anticipate that the Defendant will argue that the settlement may not be used against it because it contains denials of any liability, However, Plaintiffs were not parties to the settlement, nor were Plaintiffs' claims addressed in the DLLR Interim Settlement. Therefore, the Defendant's admissions in the Interim DLLR Settlement may be used by the Plaintiffs in the same manner as any other statement by the Defendant. Rule 408 of the Federal Rules of Evidence does not prevent consideration of this evidence. See, e.g., *Cazares v. Pacific Shore Funding*, 2006 WL 149106, 11 (C.D.Cal.,2006)

>assigned to a single judge in that circuit -- roughly twice the number of debt collection cases on that judge's docket one year previously.  Consumer advocates likewise report that courts across the country are flooded by debt collection lawsuits.  Judges have expressed concern that the burden of handling the number of debt collection lawsuits on their dockets is making it difficult for them to handle other cases in an expeditious manner.

Federal Trade Commission, Collecting Consumer Debts: The Challenges of Change, February 2009 (available online at http://www.ftc.gov/bcp/workshops/debtcollection/dcwr.pdf  last visited November 23, 2009 at Pages 55-56 (footnotes omitted).

According to the Maryland Judiciary Case Search website (http://casesearch.courts.state.md.us), in the one year period before Plaintiffs filed this action the Defendant, while unlicensed, filed approximately 7,266 illegal lawsuits against Maryland consumers.[2]  Undeterred by this Class Action lawsuit, the Defendant has continued to file collection actions, without a license. Defendant has filed approximately 179 additional  illegal debt collection suits since it was sued by the Plaintiffs in this case on September 10, 2009.  Amazingly, the Defendant has continued to file lawsuits — not less than 94 *new* law suits — even after its Interim Settlement Agreement with the DLLR and the attendant "message to collection agencies nationwide that Maryland will not tolerate unlicensed activities."  (See, quote of Secretary Perez, above).

As a result of learning of the illegal nature of Defendant's unlicensed activities, the Plaintiffs filed this Complaint seeking several claims for relief, including for violations of the FDCPA for, among other things, the Defendant's staggering number of unlicensed and illegal debt collection lawsuits. Plaintiffs seek the mandated statutory damages on behalf of themselves and the class of all others similarly situated.

---

[2] These illegal lawsuits include both collection actions and separate actions to record judgment liens.

As shown below, there are no material facts in dispute regarding the limited issues covered by this Motion and Plaintiffs are entitled to Partial Summary Judgment as a matter of law. The granting of Partial Summary Judgment will significantly streamline the litigation and promote the just, speedy and inexpensive determination of the case, and thereby narrow the issues necessary for trial.

### II. STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE

In support of its Motion for Partial Summary Judgment, Plaintiff submits the following material facts which are not in dispute:

1. For all dates relative to this class action, the Defendant was required to be licensed by Maryland as a collection agency; however, the Defendant was not licensed.

2. The Defendant admits it has never had, nor does it presently have, a license to act as a collection agency in the State of Maryland.

3. The Defendant is in the business of purchasing consumer debt and routinely attempts to collect the consumer debts by filing litigation against Maryland debtors using a network of agents and attorneys.

4. In fact, in the three years before commencement of this suit, the Defendant was the Plaintiff in more than 10,300 debt collection actions filed in various courts of the State of Maryland.

5. Two of the lawsuits filed by Defendant, where Defendant is the Plaintiff, were the underlying lawsuits filed against the Plaintiffs, Mr. Johnson and Ms. Roarty. The lawsuits were filed in the Defendant's name, and Defendant's agent actively participated in the litigation, even going so far as to sign a sworn affidavit in support of the complaint filed against Plaintiffs.

6. Defendant purchased the Plaintiffs' alleged consumer debts while they were in default.

7. Defendant is a debt buyer which routinely, as its business model, purchases debts while they are in default.

## III. STANDARD OF REVIEW

In deciding the Plaintiffs' motion, the court need only decide whether the Defendant can present a triable issue of material fact that is supported by evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321-27 (1986). When the court's scrutiny of the moving and opposing papers "clearly demonstrates the complete absence of a genuine issue as to any material fact bearing upon the issue of liability, the trial court should, for the benefit of both parties as well as the court, eliminate the unnecessary expense and delay of further litigation by means of summary adjudication." *Marsden v. Patane,* 380 F. 2d 489, 493 (5th Cir. 1967). The moving party has the burden of "showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex, supra* at 322-25.

As is clearly shown by this motion, there is no dispute of material fact, and the Plaintiffs have more than met their burden to show that the Defendant's unlicensed status and consequent violation of the FDCPA. Conversely, the Defendant has offered no undisputed material facts which would support its motion to dismiss and/or for partial summary judgment.

## IV. ARGUMENT

### A. Defendant's Unlicensed Activities Violate the FDCPA

The FDCPA was enacted by Congress in 1977 in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692 (a). The purpose of the FDCPA was "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who

refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692 (e).

The FDCPA is a remedial consumer protection act that sets forth minimum standards relating to the collection of debts. The FDCPA has been recognized to be a remedial consumer protection statute. As explained by the Third Circuit Court of Appeals in *Brown v. Card Service Center*:

> Congress enacted the FDCPA in 1977 after noting the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). At the time the Act was being considered, Congress was concerned that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Id.* A significant purpose of the Act is not only to eliminate abusive practices by debt collectors, but "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).
>
> In its findings Congress observed that "[e]xisting laws and procedures" enacted to remedy the injuries occasioned by abusive debt collectors "are inadequate to protect consumers." 15 U.S.C. § 1692(b). Accordingly, the Act provides consumers with a private cause of action against debt collectors who fail to comply with the Act. 15 U.S.C. § 1692k. A prevailing plaintiff under the Act is entitled to an award of damages, costs of suit and reasonable attorneys' fees. *Id.*
>
> Because the FDCPA is a remedial statute, *Hamilton v. United Healthcare of La.,* 310 F.3d 385, 392 (5th Cir.2002), we construe its language broadly, so as to effect its purpose, *See Stroh v. Director, OWCP*, 810 F.2d 61, 63 (3d Cir.1987). Accordingly, in considering claims under another provision of the FDCPA, we have held that certain communications from lenders to debtors should be analyzed from the perspective of the "least sophisticated debtor." *See Wilson v.Quadramed Corp.,* 225 F.3d 350, 354 (applying the perspective of the least sophisticated debtor to the notice provision of the Act, § 1692g) (citation omitted); *Graziano v. Harrison,* 950 F.2d 107, 111 (3d Cir.1991) ("Statutory notice under the Act is to be interpreted from the perspective of the 'least sophisticated debtor.' ").
>
> Analyzing lender-debtor communications from this perspective is consistent with "basic consumer-protection principles." *United States v. Nat'l Fin. Servs.,* 98 F.3d 131, 136 (4th Cir.1996). As the Second Circuit has observed, "[t]he basic purpose of the least-sophisticated consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. This standard is consistent with the norms that courts have traditionally applied in consumer-protection law." [FN1] *Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir.1993). That it may be obvious to specialists or the particularly sophisticated that a given statement is false or inaccurate does nothing to diminish that statement's "power to deceive others less experienced."

7

> *Federal Trade Comm'n v. Standard Educ. Soc'y,* 302 U.S. 112, 116, 58 S.Ct. 113, 82 L.Ed. 141 (1937). As Justice Black has observed, our laws "are made to protect the trusting as well as the suspicious," and this is particularly the case within the realm of consumer protection laws. *Id.* Bearing all of this in mind, we conclude that any lender-debtor communications potentially giving rise to claims under the FDCPA…should be analyzed from the perspective of the least sophisticated debtor.

464 F.3d 450, 453-454 (3rd Cir., 2006)

The issue of whether or not the FDCPA applies to litigation activities was decided over a decade ago by the U.S. Supreme Court in *Heintz v. Jenkins*. In that case, the Defendant claimed that the FDPCA did not apply to the litigation activities. The Supreme Court rejected that argument, and held:

> The issue before us is whether the term 'debt collector' in the Fair Debt Collection Practices Act, 91 Stat. 874, 15 U.S.C. §§ 1692-1692 *o* (1988 ed. and Supp. V), applies to a lawyer who 'regularly,' *through litigation,* tries to collect consumer debts. The Court of Appeals for the Seventh Circuit held that it does. We agree with the Seventh Circuit and we affirm its judgment.

*Heintz v. Jenkins,* 514 U.S. 291, 292 (1995).

The *Heintz* court held that "…litigating, at first blush, seems simply one way of collecting a debt." *Id.* at 297. The *Heintz* case resolved a dispute between federal Circuit Courts as to whether litigation fell within the definition of debt collecting under the FDCPA.

The 6th Circuit in *Green v. Hocking,* 9 F.3d 18 (6th Cir. 1993) adopted the view that "[o]nly collection activities, not legal activities, are covered by the act." The Supreme Court rejected the reliance of the statement of the sponsor since "the plain language of the Act itself says nothing about retaining the exemption in respect to litigation." *Heintz v. Jenkins*, 514 U.S. 291, 297.

The FDCPA itself also specifically addresses litigation activities. For example, 15 U.S.C. § 1692i states:

> (a) Venue. **Any debt collector who brings any legal action on a debt against any consumer**

8

shall…. (emphasis added).

Both the FDCPA and the Supreme Court have made it clear that filing a legal action is debt collection, and the only issue is whether or not the person filing the suit is a debt collector. The Defendant is a debt collector since it acquired the Plaintiff's alleged debt when it was in default. Moreover, the Defendant actively participated in the litigation when its agent provided an affidavit in support of the Complaint filed by the Defendant against the Plaintiff.

Claims that the FDCPA does not apply to litigation activities have been routinely rejected. For example, the Fourth Circuit Court of Appeals considered and summarily rejected the defense of "litigation privilege" to defeat claims under the FDCPA. *Sayyed v. Wolpoff & Abramson,* 485 F.3d 226 (4th Cir.2007) (also holding that even a letter from a debt collector to a debtor's attorney can be actionable under the FDCPA).

Finally, there are numerous cases that hold that an unlicensed debt collector violates the FDCPA merely be sending dunning letters which threaten litigation.  For example, the Federal District Court for Middle District of Florida (Tampa Division) recently held that an unlicensed debt collector who sends a *letter threatening a lawsuit* - not an actual lawsuit as exists in this case – violates the FDCPA, because:

> In the mind of the least sophisticated consumer, the debt collector has initiated a collection action against him and is threatening to take additional collection action if the matter is not resolved. Under Florida law, Unifund could not seek to take nor threaten to take such action absent its registration with the Office of Financial Regulation.

*LeBlanc v. Unifund CCR Partners, G.P.*, 552 F. Supp. 2d 1327, 1339 (2008).

In granting the Plaintiff's Motion for Partial Summary Judgment, the *LeBlanc* court went on to say:

> Allowing a debtor to sue under § 1692e (5) of the FDCPA for an

>   unregistered debt collector's threats to conduct business as a consumer collection agency in Florida even though such an action is not authorized under state law does not circumvent Florida's statutory scheme.
>
>   * * *
>
>   Upon a determination that Plaintiff has established his claim under § 1692e(5) for Unifund's threat to collect on a debt without being registered in Florida to do so, Plaintiff's motion for partial summary judgment on this claim is granted and Defendants' cross-motion is denied.

*Id.*

In a similar case, the United States District Court for the District of Connecticut certified an FDCPA Class Action and said:

>   Under Connecticut law, businesses that engage in the collection of consumer debts must be licensed to do so. Conn. Gen.Stat. § 36a-801. Engaging in collection of consumer debts without a license constitutes a violation that may be punished by the Banking Commissioner, Conn. Gen.Stat. §§ 36a-50, -804, -806 to -808….
>
>   That is not the end of the analysis, however. Under federal law, consumer debt collection agencies may not use 'false, deceptive, or misleading representation[s]' or 'unfair or unconscionable means' to collect debts. 15 U.S.C. §§ 1692e, 1692f. 'Without limiting the general application' of those broad prohibitions, *id.,* Congress gave specific examples of practices or representations which would violate those generalized prohibitions, including threatening 'to take any action that cannot legally be taken or that is not intended to be taken,' § 1692e(5), and '[t]he use or distribution of any written communication ... which creates a false impression as to its source, authorization, or approval.' § 1692e(9).
>
>   The theory that provides the foundation for [the Plaintiff's] lawsuit is that [Wolpoff & Abramson, LLP's] communication with consumers in Connecticut is a violation of Connecticut law, and that therefore it constitutes a *per se* violation of the FDCPA.

*Lemire v. Wolpoff & Abramson, LLP*, 256 F.R.D. 321, 323 (D.Conn.,2009).[3]

Noting that the authority for a *per se* violation is not unanimous in its District, the Connecticut court nevertheless certified the class, without ruling on the underlying merits of the *per se* argument.

The 2009 *Lemire* case involved alleged "letter violations" (as opposed to the thousands of

---

[3] Wolpoff & Abramson is the predecessor of Mann Bracken, LLP, the Defendant's current attorneys and agents in the vast majority of Maryland cases at issue.

10

*lawsuits actually filed and litigation conducted* which are at issue in the instant case). In weighing whether a letter from an unlicensed debt collector constitutes a *per se* FDCPA violation, the court quoted a prior decision from the same District Court:

> the defendant's unlicensed actions as a collection agency in the state of Connecticut constituted an "unfair or unconscionable" method of debt collection in violation of [15 U.S.C.] § 1692f. By failing to seek the proper license from the state banking commissioner, for example, the defendant deprived the plaintiff of her right as a consumer debtor residing within the state to have the defendant's qualifications as a collection agency reviewed by state authorities…Accordingly, the plaintiff is also entitled to summary judgment on this claim.

*Gaetano v. Payco of Wisconsin, Inc.*, 774 F.Supp. 1404, 1415 (D.Conn.,1990).

As noted by the *Lemire* court, however, the *per se* approach to "letter violations" is not unanimous. Some courts look to the *content* of the unlicensed debt collector's dunning letter before determining an FDCPA violation. Citing *Goins v. JBC Assocs., P.C., 352 F.Supp. 2d 262, 271 (D. Conn. 2005),* the *Lemire* court pointed out that:

> "[n]ot all courts have adopted a categorical rule that an FDCPA violation occurs whenever an unlicensed debt collector sends out any debt collection notice," but examining the content of the debt collection notices to find an FDCPA violation nevertheless). Although the *Gaetano* Court found the mere "attempt to collect a debt when prohibited from doing so by Connecticut law" to be "deceptive," 774 F. Supp. at 1415, the *Goins* Court suggested that the illegality of such conduct under federal law might depend on the *content* of the communication, suggesting that a *per se* rule might be inappropriate. 352 F. Supp. 2d at 271.

*Lemire* at 323.

As noted above, it is crucial to keep in mind that the instant case involves not mere dunning letters which may or may not constitute "threats of litigation" in the mind of the "least sophisticated consumer." What is at issue in the instant case is not mere "threats of litigation" but rather the actual

11

filing and active litigation of lawsuits against thousands of Maryland consumers by an unlicensed debt collector.

The Eastern District or New York is another Federal District Court that does find a *per se* violation for dunning letters sent by unlicensed debt collectors.  In *Williams v. Goldman & Steinberg, Inc,* that court held.:

> I conclude that there was a violation of the FDCPA because the defendant did not have a license when it sent the Collection Letter to a New York City resident, as required by regulations of the City of New York. New York, NY., Admin Code tit. 20, ch. 2, § 20-490; *see Gaetano v. Payco of Wisconsin, Inc., 774 F. Supp. 1404, 1414-15 (D. Conn. 1990)*. The case, *Lindberg v. Transworld Systems Inc.,* relied upon [*2] by the Magistrate Judge, is distinguishable because in *Lindberg,* the collection agency was licensed in the plaintiff's state, just not at the address from which the letter was sent. 846 F. Supp. 175, 181 (D. Conn. 1994). Here, the unopposed allegations were not of such a technical nature: the defendant was not licensed at all in New York City, as required by local ordinance. Therefore, a violation has been established.

2006 WL 2053715, at *1-2, 2006; 2006 U.S. Dist. LEXIS 50222, at *1-2 (E.D.N.Y.)

B. BACKGROUND ON THE MARYLAND DEBT COLLECTOR LICENSING REQUIREMENTS

"[E]**ffective October 1, 2007** any person engaged in the collection of a consumer claim the person owns, if the claim was in default when the person acquired it is required to be licensed as a **collection agency** pursuant to HB 1324 which was signed by Governor Martin O'Malley on May 8, 2007."  **EXHIBIT 3**, Maryland Collection Agency Licensing Board, Advisory Notice 07-06 (July 17, 2007) (emphasis in the original).  HB 1324 was intended, according to the Maryland General Assembly, for the following purpose:

> *of altering the definition of "collection agency" as it relates to the licensing and regulation of collection agencies;* **requiring** *certain additional persons to be licensed by the State Collection Agency Licensing Board before they may collect consumer claims in this State; establishing certain qualifications for a*

12

*collection agency license; altering the conditions under which the Board may reprimand certain licensees or suspend or revoke certain licenses; authorizing certain persons to continue to collect certain consumer claims without being licensed if the person applies for a license within a certain time period; and generally relating to the licensing and regulation of collection agencies.*

**EXHIBIT 4**, *Preamble to HB 1324, Maryland General Assembly (2007 Regular Session) (emphasis added).*

*The persons required to be licensed as a "collection agency" in the State of Maryland as of October 1, 2007 include anyone,*

> who engages **directly or indirectly** in the business of:
>
> (1)(i) collecting for, or soliciting from another, a consumer claim; or
>
> (ii) **collecting a consumer claim the person owns, if the claim was in default when the person acquired it**;
>
> (2) collecting a consumer claim the person owns, using a name or other artifice that indicates that another party is attempting to collect the consumer claim;
>
> (3) giving, selling, attempting to give or sell to another, or using, for collection of a consumer claim, a series or system of forms or letters that indicates directly or indirectly that a person other than the owner is asserting the consumer claim; or
>
> (4) employing the services of an individual or business to solicit or sell a collection system to be used for collection of a consumer claim.

(emphasis supplied)

M<small>D</small>. A<small>NN</small>. C<small>ODE</small>, B<small>US</small>. R<small>EG</small>. § 7-101 *et seq.* The 2007 legislation also included a grandfather clause for those unlicensed collection agencies to come forward to obtain a license without penalty. **EXHIBIT 4**, HB 1324 § 2, Maryland General Assembly (2007 Regular Session).

Long before the 2007 Amendment – since 1992 -- Maryland has required that "a person must have a license <u>whenever</u> the person does business as a collection agency in the State." MD. ANN. CODE, BUS. REG. § 7-301(a) (emphasis added).

### C. MARYLAND LAW DOES NOT EXEMPT "PASSIVE" DEBT COLLECTION AGENCIES FROM ITS LICENSE REQUIREMENT

The Defendant is aware that it cannot prevail on the issue of whether acting as a debt collector without a license violates the FDCPA. Therefore, the Defendant has turned to arguments concerning whether or not it was required to be licensed as a debt collector in the State of Maryland for having filed more than 10,000 collection actions in Maryland courts in the last three years alone. The Defendant contends that it is not required to hold a license as a debt collector, pursuant to MCALA, because it is a "passive" debt collector as opposed to an "active" debt collector. In making this argument, the Defendant does not look to MCALA, which governs the licensing requirements of debt collectors, but instead relies upon an unofficial letter from Kelly Mack, an employee of DLLR. This DLLR letter appears to be in response to a "follow up fax" the contents of which are unknown. Further, it appears that it was addressed to an individual, Stuart Blatt who opposed the passage of the 2007 amendment to the collection licensing statute. Attached as **EXHIBIT 5** is the legislative history relating to the 2007 amendment. The legislative history makes clear it was specifically intended to cover persons such as the Defendant within the licensing requirements. See **EXHIBIT 5** at pp. 8, 10, 14, 15, 17 and 20, which are contrary to Blatt's position set forth on pp. 22-24. In essence, Blatt tries to evade his legislative loss through a letter from an employee at DLLR.

Moreover, the letter pre-dates the effective date of the changes to the statute, which made perfectly clear that the defendant was functioning as a "collection agency" and was required to be

licensed.  If one wants to know the official position of the DLLR, one need only look at **EXHIBITS 1** and **2**.

Regardless of what "spin" the Defendant tries to put on the cryptic letter of Ms. Mack, the Court does not need to decide whether there is a distinction in the state licensing statute between "passive" and "active" collectors, because there is no basis in the statute or valid administrative authority to support the distinction.

i.   *The General Assembly Did Not Exempt "Passive" Collectors from MCALA*

Neither the original statute nor its 2007 Amendment distinguish between "active" and "passive" collection activity.  As discussed above, the MCALA covers a range of activities.  The statute does not contain the word "passive."  In fact, the legislature did allow for some exemptions, but "passive debt collectors" are not among them.  See, MD. ANN. CODE, BUS. REG., § 7-102.[4]  Further, the statute specifically addresses both direct and indirect activities when it includes anyone:

> who engages **directly or indirectly** in the business of:
>
> (1)(i) collecting for, or soliciting from another, a consumer claim; or

---

[4] Equally unavailing is any argument that somehow the filing of the lawsuit by an attorney on behalf of the debt collector is not the "act" of the debt collector is contrary to well established law. As noted in *Williams v. Snyder,* 221 Md. 262, 269, (1959): "This Court has consistently held, as have the courts in other jurisdictions, that ordinarily what is done by an attorney of record in the progress of a case is deemed to be the act of the client and is binding on him. Thomas v. Hopkins, 1956, 209 Md. 321, 121 A.2d 192. See also Schnapper v. Yoe, 1950, 194 Md. 573, 71 A.2d 759; Brooks v. Brooks, 1945, 184 Md. 419, 41 A.2d 367; McCauley v. State, 1864, 21 Md. 556; Maryland Rule 3 a."

Moreover, to the extent that Defendant claims that somehow its alleged debts were being collected by others and not it when the lawsuits were filed, the defendant falls within subsection (2) of the licensing statute that encompasses "collecting a consumer claim the person owns, using a name or other artifice that indicates that another party is attempting to collect the consumer claim". The Defendant's claims it did not collect the debts while seeking to hide behind the pretense that it's lawyers were filing the lawsuits not is the type of artifice envisioned by the statute.

>   (ii) collecting a consumer claim the person owns, if the claim was in default when the person acquired it;

Following basic cannons of statutory construction, the Supreme Court in *General Dynamics Land Systems, Inc. v. Cline* rejected a resort to legislative history when the words of the statute are clear. 540 U.S. 581, 589 (2004). In *Cline,* the Court said:

> Even from a sponsor, a single outlying statement cannot stand against a tide of context and history, not to mention 30 years of judicial interpretation producing no apparent legislative qualms. [O]rdinarily even the contemporaneous remarks of a single legislator who sponsors a bill are not controlling in analyzing legislative history.

*Id.* (internal citations and quotations omitted).

If the single remarks of an legislator are not controlling, then *a fortiori* the opinion of a state worker with no role in the passage of the law is not entitled to any weight in interpreting the statute. In *Cline* the Supreme Court had to construe the word "age" in the context of an age discrimination statute. The Court explained further:

> Even for an agency able to claim all the authority possible under *Chevron,* deference to its statutory interpretation is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent. Here, regular interpretive method leaves no serious question, not even about purely textual ambiguity in the ADEA. The word "age" takes on a definite meaning from being in the phrase "discriminat[ion] ... because of such individual's age," occurring as that phrase does in a statute structured and manifestly intended to protect the older from arbitrary favor for the younger.

*Id.* at 600 (internal citations omitted).

Applying the Supreme Court's guides in *Cline* there can be no dispute that the legislature did not exempt "passive" debt collectors from the licensing requirements of MCALA. On the contrary, the

legislature used the words "direct" and "indirect" to make sure that *all* debt collection activities were covered.  A plain reading of the statute does not support any other conclusion and the inquiry should end there.

> *ii. DLLR's Official Acts and Statements "Send a Message" That Unlicensed Debt Collectors Who File Thousands of Lawsuits are Breaking the Law.*

Although the Plaintiff does not think the court needs to look beyond the statute to determine whether "passive" debt collectors are exempt, it is clear, if the court wishes, that the DLLR is of the firm opinion that filing lawsuits to collect debts requires a license pursuant to MCALA.  *See* **EXHIBITS 1** and **2**.  Also, in DLLR's recent settlement with this Defendant, the Defendant agreed to the following key provisions material to the issues in this matter including:

(i) Midland Funding LLC would immediately apply to be licensed by DLLR pursuant to MCALA; and

(ii) all "open (active) cases in Maryland State district courts and circuit courts…in which Respondent Midland Funding, LLC…is named as a plaintiff" would be stayed to prevent further violation of the MCALA.

See, **EXHIBIT 2**, Interim Settlement Agreement and Modification to Summary Order to Cease and Desist and Summary Suspension of Collection Agency License, ¶ 2 (Action No. DFR-FY-2013-063) (Sept. 16, 2009).   It was also ordered that no further collection actions were permitted by unlicensed collection agencies.  Id. at Page 5 ("ORDERED that…Respondents may resume collection agency business activities in the State of Maryland in the name of licensed collection agency Midland Credit Management, Inc. only").

Moreover, the deference that is often shown to administrative agencies' interpretations of statutes

is only afforded to rulemaking or regulations of the agency. The slender reed upon which the Defendant relies is a single letter from a single person at the DLLR. There is nothing before the Court to suggest that Ms. Mack has any superior ability to interpret the statute at issue. Ms. Mack's letter does not even approach the level necessary before the court shows deference.

"Maryland is unique in that 'an agency's organizational rules, procedural rules, interpretive rules and statements of policy *all* must go through the same procedures as required for legislative rules.'" *State v. Copes,* 175 Md.App. 351, 380-381 ( 2007). The procedures for the promulgation of rules before the DLLR is clearly set forth in COMAR. If a party wants the DLLR to issue interpretative rules or statements of policy, then the party must submit a petition to DLLR. *See* COMAR 09.01.05.03. If the DLLR's procedures are not followed, whether an agency action is arbitrary and capricious cannot be monitored. There is no indication that the letter by an employee of DLLR, Ms. Mack, was formulated in accordance with any agency procedures. Therefore, the letter is not entitled to any deference. It is merely a letter giving a personal opinion that is contrary to the Agency's position. [5] The position of the DLLR is very clear, as evidenced by **EXHIBIT 1:** it is to "send a message nationwide" that unlicensed debt collectors are breaking the law and will not be tolerated.

The following explanation from the Maryland Encyclopedia of Law, Administrative Law and Procedure § 7 is particularly appropriate here:

> No custom, regardless of however long and generally it has been followed by administrative officials can nullify the plain meaning and purpose of a statute; however, (footnote omitted) nor is an agency's construction, although entitled to great weight as an administrative interpretation acquiesced in by the legislature, binding upon the courts.

---

[5] It is also clear that the legislature will state when the interpretation of a statute can be garnered from the office of the Commissioner of Financial Regulation. See § 12-1018.1 of the Maryland Commercial Law Article. This is no comparable provision for the MCALA. Moreover, the only the opinions entitled to weight are limited to opinions directly from the Commissioner or a Deputy Commissioner, not an analyst such as Ms. Mack.

DLLR's official statements are clear that there is no exemption to the licensing requirements of MCALA for debt collectors who file thousands of consumer debt collection lawsuits in Maryland courts. In fact, DLLR's recent enforcement activities indicate that the filing of court actions to collect debts without a license is a violation of the FDCPA. More importantly, the Defendant's agreement that it cannot proceed with any lawsuits without a license ends the issue.

D. THE UNDISPUTED MATERIAL FACTS DEMONSTRATE THAT THE DEFENDANT WAS AN UNLICENSED DEBT COLLECTOR WHEN IT SUED PLAINTIFF IN THE DISTRICT COURT OF MARYLAND

It is undisputed that the Defendant did not hold a license to act as a debt collector in the State of Maryland when it sued the Plaintiffs and thousands of other Maryland consumers. See, Material Facts Not in Dispute 1-7, *supra*. The Defendant's violation of the licensing requirements of the MCALA constitutes a violation of the FDCPA. Plaintiffs are entitled to a judgment as a matter of law on their FDCPA claim.

V. CONCLUSION

For the foregoing reasons, the Plaintiffs ar entitled to partial summary judgment and the Defendant's motion should be denied.

Respectfully Submitted,
_____/s/_____
Scott C. Borison, Esq.
Bar No. 22576
Legg Law Firm, LLC
5500 Buckeystown Pike
Frederick, Maryland 21703
(301) 620-1016;
Fax: (301) 620-1018
Borison@legglaw.com

Peter A. Holland
Bar No. 10866

                Michael G. Morin
                The Holland Law Firm, P.C.
                1410 Forest Drive, Ste. 21
                Annapolis, MD 21403
                (410) 280 6133
                *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing Opposition and Motion was served on the Defendant's counsel in this action when filed through the Court's CM/ECF system.

                _____/s/_____
                SCOTT C. BORISON