# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

## (BALTIMORE DIVISION)

| | |
|---|---|
| **DELVELL JOHNSON,** *ET AL.* <br><br>(Individually and on behalf of all Maryland residents similarly situated) <br><br>**Plaintiffs / Class Representatives** <br><br>*v.* <br><br>**MIDLAND FUNDING, LLC** <br>**Defendant** | Civil Case Number: <br><br>**09 — 02391 - RDB** |

## FIRST AMENDED COMPLAINT[1]

### (CLASS ACTION)

Plaintiffs, Delvell Johnson ("**Johnson**") and Denise Y. Roarty ("**Roarty**"), individually and on behalf of all Maryland residents similarly situated; by their attorneys Scott C. Borison of the Legg Law Firm, LLC and Peter A. Holland and Michael Gregg Morin of The Holland Law Firm, P.C.; sue Defendant Midland Funding, LLC ("**Midland**"), and state:

---

[1] This First Amended Complaint increases the *ad damnum*, updates facts and averments, and corrects any perceived pleading deficiencies addressed by the Defendant's Motion to Dismiss. The Plaintiffs have attached a comparison copy of the original Complaint and this First Amended Complaint as PLAINTIFFS' EXHIBIT NO. 1.

## PRELIMINARY STATEMENT

This class action addresses the planned, prolonged, illegal, and systematic abuse of thousands of Maryland residents and consumers by Midland.  Midland acquires, services, and collects defaulted consumer debt that is bought for a few cents on the dollar. Midland conducts business in Maryland through a transparent artifice intended to deceive both Maryland consumers and Maryland courts.  Midland attemps to collect on consumer debts by contacting Maryland consumers directly or indirectly through Midland's agents and attorneys and suing Maryland consumers, often after the statute of limitations has expired.  Midland communicates directly or indirectly with Maryland consumers and sues Maryland consumers while refusing and failing to comply with Maryland statutes requiring registration of foreign businesses; while failing to comply with Maryland licensing laws regulating collection agencies; while assiduously violating federal and Maryland consumer debt collection statues; while unlawfully using the courts of Maryland; and while routinely violating the Maryland Consumer Protection Act.  The communications from Midland, directly and indirectly through Midland's agents, to consumers are most often contradictory, inaccurate, and misleading.  Virtually <u>every</u> act of Midland in its attempts to collect consumer debt in Maryland is an unfair and deceptive act proscribed by both federal and Maryland statutes.

## JURISDICTION AND VENUE

1.   Jurisdiction of this Court arises under 15 U.S.C. § 1692k and 28 U.S.C. § 1337.

2.   Supplemental jurisdiction for the State law claims arises under 28 U.S.C. § 1367.

3.   Declaratory and injunctive relief are available pursuant to 28 U.S.C. §§ 2201 and 2202, Md. Code Ann., §§ 3-401 – 3-415, and Md. Rules 15-501 – 15-505.

4.   Venue in this District is proper in that the Defendant transacts business within the District and the conduct complained of occurred in the District.

## PARTIES

5.   Johnson is a natural person who resides in Anne Arundel County, Maryland.

6.   For all issues relevant to this civil action, Johnson is a "consumer" as defined at 15 U.S.C. § 1692a and Md. Code Ann., Com. Law, § 13-101.[2]

7.   Roarty is a natural person who resides in Montgomery County, Maryland.

8.   For all issues relevant to this civil action, Roarty is a "consumer" as defined by at 15 U.S.C. § 1692a and Md. Code Ann., Com. Law, § 13-101.

9.   Midland, upon information and belief, is a foreign limited liability company with its principal place of business at Suite 200, 8875 Aero Drive, San Diego, California 92123.

---

[2]   All references to State statutes are to the Maryland Code Annotated as of the date of the filing of this class action unless a specific reference is clearly noted otherwise.

10.     Midland is a "debt collector" as defined by the Fair Debt Collections Practices Act ("**FDCPA**") as Midland acquires debt after default, 15 U.S.C. § 1692a.

11.     Midland is a "collector" as defined by Com. Law, § 14-201(b) as Midland is "... collecting or attempting to collect an alleged debt arising out of a consumer transaction."

12.     Midland is a "collection agency" as defined by Bus. Reg., 7-101(c) as Midland "... engages directly or indirectly in the business of:  ... (1) (ii) collecting a consumer claim the person owns, if the claim was in default when the person acquired it" or "...(2) collecting a consumer claim the person owns, using a name or other artifice that indicates that another party is attempting to collect the consumer claim."

13.     Within Maryland, Midland is a foreign limited liability company.  Corp. & Assn., §§ 4A-1001 – 4A-1013.

### FACTUAL ALLEGATIONS RELATING TO JOHNSON

14.     At some point in time, Johnson had a credit card account with CitiBank ("**Johnson Account**").

15.     The Johnson Account was for a consumer debt as defined by 15 U.S.C. § 1692a(5) and Com. Law, §§ 13-101(d) and 14-201(c) in that Johnson's Account was for personal, family, or household purposes.

16.     Due to employment issues and a substantial loss of income, Johnson defaulted on the Johnson Account.

17.     Subsequent to Johnson's default on the Johnson Account, Midland acquired the Account for a few cents on each dollar or became servicer of the debt and, upon information and belief, acquired the Johnson Acount through a debt buying wholesaler.

18.     On a date unknown but prior to 12 January 2009, Midland retained the services of Mann Bracken, LLC ("**Mann Bracken**") as its attorney and agent.

19.     On 12 January 2009, Midland, by and through its attorneys and agents, communicated with Johnson ("**January Letter**") by letter entitled "Notice of Intent to Sue." **PLAINTIFFS' EXHIBIT NO. 2**.

20.     On 12 January 2009, Midland lacked the authority to conduct business in Maryland directly or through its attorneys and agents.  Corp. & Assn., § 4A-1001(b).

21.     On 12 January 2009, Midland lacked the authority to sue in any Maryland court on any contract matter.  Corps. & Assoc., §§ 4A-1001(b) and 4A-1007(a).

22.     In the January Letter, Midland, by its agents, represented to Johnson that the balance owed on the Johnson Account was $20,815.05.

23.     On 12 January 2009, the balance due on the Johnson Account was not $20,815.05.

24.     In the January Letter, Midland, by and through its attorneys and agents Jennifer L. Anthony ("**Anthony**") and Mann Bracken represented to Johnson that, "[t]he above attorney [*i.e.,* 'Jennifer L. Anthony, Esq.'] personally requested that this

letter be sent after he/she reviewed relevant portions of our file for the purpose of making a determination to file suit."

25.    The January 2009 letter to Johnson did not contain the notices to a consumer required by the FDCPA.

26.    On or about 24 March 2009, Midland, by and through its attorneys and agents, filed suit against Johnson in the District Court of Maryland for Anne Arundel County, case no. 0702-0001970-2009 ("**Johnson State Case**").  **PLAINTIFFS' EXHIBIT No. 3**.

27.    The Johnson State Case was filed under affidavit, *i.e.,* Maryland Rule 3-306; said affidavit made under oath by an employee and/or agent of Midland. **PLAINTIFFS' EXHIBIT No. 4**.

28.    The affidavit submitted to the District Court of Maryland in the Johnson State Case was false and was known to Midlands' attorneys and agents to be false when it was presented to the District Court.  Among other issues, the affidavit was produced on a "production line" of hundreds of affidavits and was then executed by an agent of Midland who had no personal knowledge of facts addressed by the affidavit.

29.    According to the complaint, the Johnson State Case was filed by an attorney admitted to practice in Maryland and who was authorized to represent Midland before Maryland courts.

30.    On 24 March 2009, the filing by Midland of the Johnson State Case violated FDCPA.

31.     On 24 March 2009, the filing by Midland of the Johnson State Case vio-lated both MDCDCA and MDCPA.

32.     On 24 March 2009, Midland lacked the authority to file the Johnson State Case.   Midland was specifically precluded by statute from filing and maintaining the Johnson State Case.  Corp. & Assn., § 4A-1007(a).

33.     In the Johnson State Case, Midland claimed that the principal balance of the Johnson Account was $15,924.99.

34.     On 24 March 2009, the principal balance due on the Johnson Account was not $15,924.99.

35.     In the Johnson State Case, Midland falsely claimed principal, interest, and fees as principal.

36.     In the Johnson State Case, Midland demanded interest on interest despite the fact that such compound interest is not allowed in Maryland in a consumer debt.

37.     Johnson timely filed his Notice of Intention to Defend[3] and specifically raised the issues Midland's lack of capacity to sue in a Maryland court directly or in a representative capacity.

38.     Johnson requested a trial by jury in the Johnson State Case and on 24 September 2009, the Johnson State Case was transferred from the District Court of

---

[3]   The responsive pleading in the District Court of Maryland is a notice of intention to defend rather than an answer.

Maryland to the Circuit Court for Anne Arundel County, and docketed as civil action 02-C-09-145163. **PLAINTIFFS' EXHIBIT NO. 5.**

39.     On 16 September 2009, six days after the filing of the original Complaint in this action, the Maryland State Collection Agency Licensing Board in the Office of the Commissioner of Financial Regulation ("**CFR**") issued a Summary Order to Cease and Desist and Summary Suspension of Collection Agency Licenses ("**C&D Order**"). **PLAINTIFFS' EXHIBIT NO. 6.**

40.     The C&D Order addressed the same issues raised in this class action and ordered Midland and its associated entities and directors to cease all collection activity in Maryland.

41.     The Johnson State Case has been stayed at the request of Midland as required by the C&D Order.

42.     On or about 5 June 2009, Midland, by and through its attorneys, communicated with Johnson ("**June Letter**"). **PLAINTIFFS' EXHIBIT NO. 7.**

43.     In the June Letter, Midland represented that the debt on the Johnson Account was $17,554.47.

44.     On 5 June 2009, the balance due on the Johnson Account was not $17,544.47.

45.     In the June Letter, sent to Johnson more than two months after Midland had filed the Johnson State Case, Midland, by its attorneys and agents, represented to

Johnson that, "[a]t this time no Attorney with this Firm [*i.e.,* Mann Bracken] has personally reviewed the particular circumstances of your account."

46.     The representation that no attorney had reviewed the "particular circumstances" of the Johnson Account demonstrates that the January Letter and March lawsuit set forth false statements and were deceptive and misleading.

47.     Midland and its attorneys and agents knew the location of Johnson at all times relevant to this civil action.  Both the January Letter and the Johnson State Case contain the correct address for Johnson.

48.     During 2009, Midland, by and through its attorneys and agents, repeatedly contacted third parties, including Johnson's elderly grandmother, and discussed Johnson's alleged debt with the third-parties.

### FACTUAL ALLEGATIONS RELATING TO ROARTY

49.     At some point in time, Roarty had a credit account with Target ("**Roarty Account**").

50.     The Roarty Account was for a consumer debt as defined by 15 U.S.C. § 1692a (5) and Com. Law, §§ 13-101(d) and 14-201(c) in that Roarty's Account was for personal, family, or household purposes.

51.     Roarty defaulted on the Roarty Account in approximately February 2004.

52.     On a date unknown but between February 2004 and 10 September 2008, Midland acquired the Roarty Account for, upon information and belief, a few cents on the dollar.

53.     At the time that Midland acquired the Roarty Account, the Roarty Account was in default.

54.     On or about 10 September 2008, Midland filed suit against Roarty in the District Court of Maryland for Montgomery County, case no. 0601-0022394-2008 ("**Roarty State Case**").  **PLAINTIFFS' EXHIBIT NO. 8**.

55.     The Roarty State Case was an attempt by Midland to directly collect a consumer debt by litigation filed by Midland through Midland's attorneys and agents.

56.     On 10 September 2008, Midland lacked the authority to file the Roarty State Case.  Midland was specifically precluded by statute from filing and maintaining the Roarty State Case.  Corp. & Assn., § 4A-1007(a).

57.     On 10 September 2008, the Roarty Account was well beyond the Maryland limitation of actions of three years.  Ct. & Jud. Proc., § 5-101.

58.     In the Roarty State Case, Midland claimed that the balance of the principal of the Roarty Account was $7,092.37.

59.     On 10 September 2008, the principal balance of the Roarty Account was not $7,092.37.

60.     In the Roarty State Case, Midland falsely claimed principal, interest, and fees as principal.

61.     In the Roarty State Case, Midland, by and through its attorneys and agents, demanded interest on interest despite the fact that such compound interest is not allowed in Maryland in a consumer debt.

62.     On 10 September 2008, the filing by Midland, by and through its attorneys and agents, of the Roarty State Case violated FDCPA.

63.     On 10 September 2008, the filing by Midland, by and through its attorneys and agents, of the Roarty State Case violated both MDCDCA and MDCPA.

64.     Roarty filed her Notice of Intention to Defend and specifically raised the issues of limitation of actions and Midland's lack of capacity to sue in a Maryland court directly or in a representative capacity.

65.     On or about 1 March 2009, Midland, by and through its attorneys and agents, communicated with Roarty by sending interrogatories and demand for production to Roarty.  The communication failed to comply with the notice requirements of the FDCPA.

66.     On 14 May 2009, Roarty responded to Midland's interrogatories and request for production.  In her response, Roarty again raised the issues of limitation of actions and Midland's lack of capacity to sue in a Maryland court directly or in a representative capacity.  Additionally, Roarty disputed the amount of the debt claimed by Midland.

67.     From 14 May 2009 through 1 September 2009, there was no change in any fact material to Roarty's defense of the Roarty State Case.  Specifically there was no change to the facts that (1) Midland was not registered in Maryland, (2) Midland was not licensed in Maryland, and (3) the limitations of action on the Roarty Account had expired approximately a year and a half before Midland filed the Roarty State Case.

68.     Only after Roarty and her attorney appeared for trial on 2 September 2009, Midland, by and through its attorneys and agents, moved to dismiss the Roarty State Case <u>without</u> prejudice.   After Roarty objected, the District Court dismissed the Roarty State Case <u>with</u> prejudice.   **PLAINTIFFS' EXHIBIT NO. 9.**

69.     At the trial of the Roarty State Case, Midland stated, by and through its attorney and on the record, that its motion to dismiss was based on Roarty's response to interrogatories, a response that Midland had received in May 2009, approximately four months earlier.

70.     By its own admission, Midland knew in May 2009 that (1) the Roarty State Case was improper as the case was filed beyond the statute of limitations; (2) the Roarty State Case was filed and maintained in continuing violation of the FDCPA; (3) the Roarty State case was filed and maintained in continuing violation of the Maryland Consumer Debt Collection Act (Md. Code Ann. 14-201 et. seq.) and the Maryland Consumer Protection Act (Md. Code Ann. 13-101 et. seq.); and (4) Midland lacked the legal capacity to sue in Maryland.

71.     Midland refused and failed to dismiss the Roarty State Case in the hope that Roarty would not appear for the trial and Midland could then obtain yet another improper judgment despite Midland's knowledge that the claim was time barred in addition to the other fatal flaws in the case.

## CLASS DEFINITIONS

72.     The class of persons represented by Johnson and Roarty ("**Class**") is composed of all natural persons who reside in Maryland and who have been the subject of consumer debt collection efforts by Midland within three years immediately preceding the filing of this class action that included the filing of an action before a Court of the State of Maryland.

73.     The Plaintiffs estimate that there are approximately 12,000 members of the Class.

74.     A sub-class of the persons represented by Johnson and Roarty ("**Sub-Class**") is composed of all member of the Class who have been the subject of consumer debt collection efforts by Midland within one year immediately preceding the filing of this pleading that included the filing of an action before a Court of the State of Maryland.

75.     The Plaintiffs estimate that there are approximately 6500 members of the Sub-Class.

### FACTUAL ALLEGATIONS COMMON TO THE CLASS AND SUB-CLASS

76.     Midland's principal business is the purchase and/or servicing of consumer debt that is purchased after default for the purpose of collecting the consumer debt.

77.     Upon information and belief, the consumer debt in default is acquired for three or four cents on the dollar.

78.     Immediately upon acquiring or becoming the servicer of each consumer debt, Midland routinely and consistently misstates the total of the principal, interest, and fees allegedly due as the principal.

79.     Midland purposefully and willful misstates the principal, interest, and fees as the principal so as to claim funds to which it is not entitled under Maryland law.

80.     Midland does business in Maryland by directly or indirectly attempting to collect millions of dollars in consumer debt from Maryland consumers.

81.     Midland, directly or through its attorneys and agents, routinely contacts Maryland consumers in attempts to collect alleged consumer debt.

82.     Midland, by and through its attorneys and agents, has filed more than twelve thousand law suits and judgment liens in Maryland in the three years immediately preceding this civil action.

83.     Midland, by and through its attorneys and agents, has filed more than six thousand law suits and judgment liens in Maryland in the one year immediately preceding this civil action.

84.     The State of Maryland issued its Cease and Desist Order was against Midland and its related entities on 16 September 2009.

85.     From 17 September 2009 to the present, Midland, by and through its attorneys and agents, has continued its attempts to collect consumer debts in Maryland despite the Cease and Desist Order.  Midland's continuing collection efforts in violation of the Cease and Desist Order include filing not less than 90 new civil actions and judg-

ment liens (**PLAINTIFFS' EXHIBIT NO. 10**), obtaining dozens of civil judgments, and continuing to file numerous documents in open collection cases.

86.     On 23 September 2009, Midland entered into an Interim Settlement Agreement with the Maryland State Collection Agency Licensing Board ("**Interim Agreement**"). **PLAINTIFFS' EXHIBIT NO. 11**.

87.     The terms of the Interim Agreement included the requirement that Midland apply to be licensed by Maryland as a collection agency and that Midland would submit appropriate motions to stay all open (active) cases in Maryland State district courts and circuit courts.

88.     Since 17 September 2009, Midland, by and through its attorneys and agents, has simply defied the Cease and Desist Order.

89.     Since 23 September 2009, Midland, by and through its attorneys and agents, has simply defied and violated the Interim Agreement.

90.     Midland has filed motions to stay in those cases in which consumers have challenged Midland's illegal collection actions but has contemptuously continued dozens, if not hundreds, of other consumer collection cases.  In other words, Midland has used the Cease and Desist Order as a shield to thwart consumers attempting to dispute alleged debts while continuing other cases through judgments and the filing of judgment liens.

91.     By doing business in Maryland, Midland assents to the laws of Maryland (Corp. & Assn., § 4A-1010) and appoints SDAT as its agent for service of process with

respect to causes of action arising out of doing business in Maryland (Corp. & Assn., § 4A-1007(c)).

92.     By doing business in Maryland — substantial business in Maryland — Midland is required to register with the Maryland Department of Assessment and Taxation ("**SDAT**").  Corp. & Assn., § 4A-1001, *et seq.*

93.     During all dates relevant to this civil action prior to 22 October 2009, Midland was not registered with SDAT.   **.**

94.     On 22 October 2009, Midland registered with SDAT as a foreign limited liability company.  **Plaintiffs' Exhibit No. 12**.

95.     Midland is a "collection agency" as that term is defined by Title 7 of the Business Regulation Article, Maryland Code Annotated as Midland acquires or services consumer debt after the debt is in default.  Bus. Reg., § 7-101(c)(1)(ii).

96.     A "collection agency" is required to be licensed by Maryland.  Bus. Reg., § 7-301.

97.     Midland is not licensed by Maryland as a "collection agency"; however, upon information and belief, Midland is in the process - belatedly – of obtaining a Maryland license as a collection agency.  **Plaintiffs' Exhibit No. 13**.

98.     Every collection effort in Maryland by Midland, including each and every civil action filed in Maryland and each and every judgment lien filed in Maryland, is an unfair and deceptive trade practice.

99.    Every collection effort in Maryland by Midland, including each and every civil action filed in Maryland and each and every judgment lien filed in Maryland, is a violation of the Maryland Consumer Debt Collection Act.

100.    Every collection effort in Maryland by Midland, including each and every civil action filed in Maryland and each and every judgment lien filed in Maryland, is a violation of the Maryland Consumer Protection Act.

101.    In the vast majority, if not all, of civil actions filed in Maryland by Midland, Midland willfully misstates the amount of principal by misrepresenting principal, interest, and other fees as principal.

102.    In the vast majority, if not all, of civil actions filed in Maryland by Midland, Midland willfully misstates the amount of interest due to Midland by demanding interest on interest, *i.e.,* by demanding compound interest.

103.    In the vast majority, if not all, of civil actions filed in Maryland by Midland, Midland willfully misstates attorney fees to which Midland is entitled.

104.    In the vast majority, if not all, of Midland's transactions in Maryland, Midland communicates with Maryland consumers alleging a debt and falsely misrepresenting principal, interest, and fees as principal.

105.    In many of the civil actions filed in Maryland by Midland, Midland willfully and illegally disclosed personal information about consumers to the public including the consumers' social security account numbers.

106.    In the majority of civil actions filed in Maryland by Midland, Midland will-fully files such actions despite the fact that the alleged debt is beyond the statutory limitations of action.

107.    In the majority, if not all, of civil actions filed in Maryland by Midland, Mid-land filed for affidavit judgment pursuant to Rule 3-306; however, the affidavits pro-vided do not comply with the requirements for such affidavits.

108.    In the majority, if not all, of civil actions filed in Maryland by Midland and under Affidavit, Midland's Affidavit was false and defective and was known by Midland to be false and defective when filed.

109.    The affidavits submitted by Midland are deceptive in that the affidavits (1) are executed by persons other than Midland's employees, (2) executed by persons other than employees of the original creditor, and (3) purport to affirm the records of businesses other than the affiant's business.

110.    The affidavits submitted by Midland are purposefully deceptive in that they are artfully designed to make it appear that the affiant has personal knowledge of business records of corporations that the affiant has never worked for and of which the affiant could not possibly have personal knowledge.

111.    The affidavits submitted by Midland are purposefully deceptive in that the affidavits falsely misstate principal, interest, and fees as principal.

112.    The affidavits submitted by Midland are purposefully deceptive in that the affidavits deceptively suggest that Midland has all relevant records of Midland, the original creditors, and the intervening consumer debt wholesalers.

113.    The affidavits submitted by Midland to Maryland courts are exactly the same type of fraudulent affidavits that have been addressed by other federal courts including the recent decision by Judge David A. Katz, in *Midland Funding, LLC v. Andrea L. Brent*, 2009 U.S. Dist. LEXIS 87266, case no. 08-cv-1434, United States District Court for the District of Ohio. **PLAINTIFFS' EXHIBIT NO. 14**.

114.    A violation of the Maryland Consumer Debt Collection Act is a violation of the Maryland Consumer Protection Act.  Com. Law, §§ 13-301(14)(iii).

115.    Engaging in an unfair or deceptive trade practice in the collection of consumer debts is a violation of the Maryland Consumer Protection Act.  Com. Law, § 13-303(4).

116.    The disclosure of a consumer's social security number or other personal information in a public document, such as documents filed in the District Court of Maryland, is a violation of the Maryland Consumer Protection Act.  Com. Law, § 13-301(14)(xxi), § 14-3402 and § 14-3508.

117.    While Maryland's Consumer Protection Act does not require that a consumer has in fact been misled, deceived, or damaged as a result of its violation, every member of the Class has been misled, deceived, or damaged as a result of Midland's violation of Maryland's Consumer Debt Collection and Consumer Protection Acts.

118.    The questions of law and fact common to the Class and/or Sub-Class are:

118.1.    Whether Midland has conducted business in Maryland to the degree that Midland is required to be registered in Maryland.

118.2.    Whether Midland has acted a debt collector in Maryland.

118.3.    Whether Midland has acted as a collection agency in Maryland

118.4.    Whether Midland is required to be licensed as a collection agency.

118.5.    Whether Midland has disclosed consumers' social security numbers or other personal information to the public.

118.6.    Whether Midland has violated FDCPA.

118.7.    Whether Midland has violated MDCDCA.

118.8.    Whether Midland has violated MDCPA.

118.9.    Whether Midland has filed thousands of civil actions in Maryland that it was precluded by Maryland statutes from filing.

118.10.    Whether Midland should be enjoined from continuing to act as a debt collector in Maryland without being licensed by Maryland as a collection agency.

118.11.    Whether Midland should be enjoined from continuing to act as a collection agency in Maryland.

118.12.   Whether the Midland should be ordered to seek orders vacating all judgments entered in favor of Midland during the three years immediately preceding the filing of this class action.

118.13.   Whether Midland should be ordered to disgorge all funds that it has wrongfully collected from Maryland consumers in violation of the FDCPA, in violation of the MDCDCA, in violation of the MDCPA, without being registered to do business in the State, and without being licensed as a collection agency.

118.14.   The statutory damages allowed and claimed in this civil action.

118.15.   The attorney fees, litigation costs, and court costs allowed and claimed in this civil action.

118.16.   The declaratory relief sought in this civil action.

118.17.   The injunctive relief sought in this civil action.

119.   These questions of law and fact are common to the Class or Sub-Class and predominate over questions affecting only individual members.   A class action is superior to other available methods for a fair and efficient adjudication of the controversy because such action is uniquely suited to determining the rights and damages to thousands of similarly situated individuals while minimizing the amount of legal resources which must be utilized to resolve the controversy.

120.   The only individual questions concern the identification of Class members and the actual damages of each Class member to be disgorged by Midland.  This infor-

mation can be determined by a simple ministerial examination of the business records of Midland.  Upon information and belief, Midland maintains business records that consist of extensive and sophisticated computer records that can be searched, downloaded, and printed in <u>minutes</u>.  Such business records are, of course, the same records that Midland has used to support its thousands of improper civil actions in Maryland.  Such business records are admissible as an exception to hearsay and as a statement by a party.

121.    Johnson's and Roarty's claims are typical of the claims of the Class members.

122.    Johnson and Roarty are similarly situated with and have suffered similar damages as the other members of the Class and Sub-Class.

123.    Johnson and Roarty will fairly and adequately protect the interest of all Class members in the prosecution of this action.

124.    Johnson and Roarty have retained attorneys who are experienced in consumer protection laws, experienced in the collection of consumer debt and the defense of such acts and litigation, and experienced in class actions.

125.    Johnson's and Roarty's attorneys are adequate to represent the Class and Sub-Class.

COUNT **I**

DECLARATORY JUDGMENT

(CLAIM ON BEHALF OF NAMED PLAINTIFFS AND CLASS)

126.    Plaintiffs adopt by reference the allegations contained in paragraphs 1 through 125 of this Class Action with the same effect as if herein fully set forth.

127.    This is an action for declaratory judgment pursuant to Md. Code Ann., Cts. & Jud. Proc., § 3-406 for the purposes of determining a question of actual controversy between the parties, as is more fully detailed in this pleading.

128.    At all times relevant to this civil action, Midland was required to be registered to do business in the State.

129.    At all times relevant to this civil action, Midland was not registered to do business in Maryland and was precluded by statute from filing or maintaining a civil action based on contract or equity.

130.    At all times relevant to this civil action, Midland was required to be licensed by the State as a collection agency.

131.    At all times relevant to this civil action, Midland was not licensed by the State as a collection agency.

132.    Every civil action filed by Midland in Maryland to collect a consumer debt was precluded by law, a fraud on the courts of Maryland, and a fraud on each of the thousands of Maryland consumers sued by Midland.

**WHEREFORE**, Johnson, Roarty, and the Class members pray that this Court:

**[1]**   Certify this civil action as a class action with Johnson and Roarty as Class representative and their attorneys as counsel on behalf of the Class;

**[2]**   Enter an Order of this Court that Midland was required to be registered to do business in Maryland during the three years preceding this class action and that Midland was not registered to do business in Maryland;

**[3]**   Enter an Order of this Court that Midland is required to be licensed as a collection agency by the State and that Midland is not licensed by the State as a collection agency;

**[4]**   Enter an Order of this Court that Midland lacked the authority to have filed or maintained any consumer collection civil action in the District Court of Maryland or any circuit court in Maryland;

**[5]**   Enter and Order of this Court that within 30 days of the Order, Midland will take every action necessary to vacate every judgment entered in its favor in Maryland during the three years immediately preceding this class action for an alleged consumer debt;

**[6]**   Enter and Order of this Court that within 30 days of the Order, Midland will take every action necessary to release every judgment lien recorded in favor of Midland in Maryland during the three years immediately preceding this class action for a judgment in a civil action for the collection of a consumer debt;

**[7]**     Award reasonable attorneys' fees, litigation expenses, and the costs of this civil action; and

**[8]**     Provide such other relief as the Court deems appropriate.

## COUNT II

### COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

### (CLAIM ON BEHALF OF NAMED PLAINTIFFS AND CLASS)

133.    Plaintiffs adopt by reference the allegations contained in paragraphs 1 through 130 of this Class Action with the same effect as if herein fully set forth.

134.    Johnson and Roarty and all other members of the Class are residents of Maryland.

135.    Midland, by and through its attorneys and agents, has used and is continuing to use the District and Circuit Courts of Maryland to unlawfully collect consumer debt, which has caused actual injury or harm to Johnson, Roarty and all other members of the Class.

136.    Midland, by and through its attorneys and agents, collects consumer debt in Maryland without regard to Maryland law, Maryland Rules, or the Cease and Desist Order.

137.    Midland business model is simple, Midland will use and has used artifice in order to circumvent the law in its efforts to maximize profits.

138.   Unless this Court enters an injunction precluding Midland's continuing unlawful conduct, Maryland consumers will continue to be irreparably harmed by Midland's improper and illegal conduct.

**WHEREFORE**, Johnson, Roarty, and the Class members pray that this Court:

**[1]**   Certify this civil action as a class action with Johnson and Roarty as Class representative and their attorneys as counsel on behalf of the Class;

**[2]**   Enter an Order of this Court that Midland is required to be registered to do business in Maryland and that Midland was not registered to do business in Maryland during the three years immediately proceeding this class action;

**[3]**   Enter an Order of this Court that Midland has been required to be licensed as a collection agency by the State since 1 October 2007 and that Midland has not been licensed by the State as a collection agency from 1 October 2007 through the date of this class action;

**[4]**   Enter an Order of this Court that Midland lacked the authority to have filed or maintained any consumer collection civil action in the Circuit Court for Maryland or the District Court of Maryland for Maryland during the three years immediately proceeding this class action;

**[5]**   Enter an Order of this Court granting Johnson, Roarty, and the Class a preliminary injunction restraining and enjoining Midland Funding, LLC from any affirmative act in any state court of Maryland in which Midland Fund-

ing, LLC is a plaintiff and in which Midland Funding, LLC's claims as based on an alleged consumer debt;

[6]     Enter an Order of this Court granting Johnson, Roarty, and the Class a preliminary injunction restraining and enjoining Midland Funding, LLC from any act to collect any consumer debt within Maryland;

[7]     Enter an Order of this Court granting Johnson, Roarty, and the Class a permanent injunction restraining and enjoining Midland Funding, LLC from filing or maintaining as a plaintiff any contract or equity based cause of action in any state court of Maryland until such time as Midland Funding, LLC is properly registered with the Maryland Department of Assessments and Taxation;

[8]     Enter an Order of this Court granting Johnson, Roarty, and the Class a permanent injunction restraining and enjoining Midland Funding, LLC from any act to collect any consumer debt within Maryland until such time as Midland Funding, LLC is licensed as a collection agency by Maryland;

[9]     Enter an Order of this Court that Midland Funding, LLC will immediately take all actions necessary to vacate every judgment entered in a Maryland court during the three years immediately proceeding this class action in favor of Midland Funding, LLC where the civil action initiated by Midland Funding, LLC was for the collection of a consumer debt;

**[10]**   Enter an Order of this Court that Midland Funding, LLC will immediately take all actions necessary to vacate every lien entered in a Maryland court during the three years immediately proceeding this class action in favor of Midland Funding, LLC where the civil action initiated by Midland Funding, LLC was for the collection of a consumer debt;

**[11]**   Award reasonable attorneys' fees, litigation expenses, and the costs of this civil action; and

**[12]**   Provide such other relief as the Court deems appropriate:

**COUNT III**

**VIOLATION OF THE MARYLAND CONSUMER DEBT COLLECTION ACT (MDCDCA)**

**MD CODE ANN., COM. LAW, §§ 14-201, *ET SEQ.***

***(CLAIM ON BEHALF OF NAMED PLAINTIFFS AND CLASS)***

139.   Plaintiffs adopt by reference the allegations contained in paragraphs 1 through 138 of this Class Action with the same effect as if herein fully set forth.

140.   Midland, by and through its attorneys and agents, violated the MDCDCA in that Midland communicated with consumers after Midland knew that the consumers are represented by an attorney.

141.   Midland, by and through its attorneys and agents, violated the MDCDCA in that Midland makes false representations to consumers as to the character, amount, or legal status of alleged consumer debt.

142.   Midland, by and through its attorneys and agents, violated the MDCDCA in that Midland makes false representations to consumers that the communication is from an attorney while simultaneously claiming that no attorney has reviewed the account addressed by the communication.

143.   Midland, by and through its attorneys and agents, violated the MDCDCA in that Midland threatened to take action that cannot legally be taken to collect a consumer debt.

144.   Midland, by and through its attorneys and agents, violated the MDCDCA in that Midland actually took action that cannot legally be taken to collect a consumer debt.

145.   Midland, by and through its attorneys and agents, violated the MDCDCA in that Midland falsely represents to consumers that consumer accounts have been acquired by innocent purchasers for value.

146.   Midland, by and through its attorneys and agents, violated the MDCDCA in that Midland attempted to collect amounts that are not expressly authorized by the agreement creating the debt and permitted by law.

147.   Midland, by and through its attorneys and agents, violated the MDCDCA in that Midland sues consumers in a county other than the county in which the consumer resides.

148.   Johnson, Roarty, and each member of the Sub-Class suffered damages as a result of Midland's violations of the MDCDCA.

149.    The MDCDCA provides for actual damages.

150.    The MDCDCA provides for reasonable attorneys' fees.

**WHEREFORE**, the Plaintiff and the Class members pray that this Court:

**[1]**    Certify this civil action as a class action with Johnson and Roarty as Class representatives and their attorneys as counsel on behalf of the Class;

**[2]**    Enter judgment in favor of the Class and against Midland in such amount as to be determined at trial and, for the purposes of a sum certain subject to further discovery as to the size of the Class, the amount sought on behalf of the Class is twenty million dollars ($20,000,000.00);

**[3]**    Award reasonable attorneys' fees, litigation expenses, and the costs of this civil action; and

**[4]**    Provide such other relief as the Court deems appropriate.

### COUNT IV

### VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT (MDCPA)

### MD CODE ANN., COM. LAW, §§ 13-101 — 13-501

### (CLAIM ON BEHALF OF NAMED PLAINTIFFS AND CLASS)

151.    Plaintiffs adopt by reference the allegations contained in paragraphs 1 through 150 of this Class Action with the same effect as if herein fully set forth.

152.    Midland, by and through its attorneys and agents, violated the MDCPA in that Midland communicated with consumers after Midland knew that the consumers were represented by an attorney.

153.   Midland, by and through its attorneys and agents, violated the MDCPA in that Midland makes false representations to consumers as to the character, amount, or legal status of alleged consumer debt.

154.   Midland, by and through its attorneys and agents, violated the MDCPA in that Midland makes false representations to consumers that the communication is from an attorney while simultaneously claiming that no attorney has reviewed the account addressed by the communication.

155.   Midland, by and through its attorneys and agents, violated the MDCPA in that Midland threatened to take action that it could not legally take to collect a con-sumer debt.

156.   Midland, by and through its attorneys and agents, violated the MDCPA in that Midland actually took action that it could not legally take to collect a consumer debt.

157.   Midland, by and through its attorneys and agents, violated the MDCPA in that Midland falsely represents to consumers that consumer accounts have been ac-quired by innocent purchasers for value.

158.   Midland, by and through its attorneys and agents, violated the MDCPA in that Midland attempted to collect amounts that are not expressly authorized by the agreement creating the debt and permitted by law.

159.   Midland, by and through its attorneys and agents, violated the MDCPA in that Midland sues consumers in a county other than the county in which the consumer resides.

160.   Midland, by and through its attorneys and agents, violated the MDCPA when it publicly disclosed social security numbers or other personal information.

161.   Johnson, Roarty, and each member of the Sub-Class suffered damages, and actual inury or loss as a result of Midland's violation of the MDCPA.

162.   The MDCPA provides for actual damages.

163.   The MDCPA provides for reasonable attorneys' fees.

**WHEREFORE**, the Plaintiff and the Class members pray that this Court:

[1]   Certify this civil action as a class action with Johnson and Roarty as Class representative and their attorneys as counsel on behalf of the Class;

[2]   Enter judgment in favor of the Class and against Midland in such amount as to be determined at trial and for the purposes of a sum certain, subject to further discovery as to the size of the Class, the amount sought on behalf of the Class is twenty million dollars ($20,000,000.00);

[3]   Award reasonable attorneys' fees, litigation expenses, and the costs of this civil action; and

[4]   Provide such other relief as the Court deems appropriate.

## COUNT V

## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

## 15 U.S.C. §§ 1692, ET SEQ.

### (CLAIM ON BEHALF OF NAMED PLAINTIFFS AND SUB-CLASS)

164.   Plaintiffs adopt by reference the allegations contained in paragraphs 1 through 163 of this Class Action with the same effect as if herein fully set forth.

165.   Midland, by and through its attorneys and agents, violated the FDCPA in that Midland communicated with consumers after Midland knew that the consumers were represented by an attorney.

166.   Midland, by and through its attorneys and agents, violated the FDCPA in that Midland makes false representations to consumers as to the character, amount, or legal status of alleged consumer debt.

167.   Midland, by and through its attorneys and agents, violated the FDCPA in that Midland makes false representations to consumers that the communication is from an attorney while simultaneously claiming that no attorney has reviewed the account addressed by the communication.

168.   Midland, by and through its attorneys and agents, violated the FDCPA in that Midland threatened to take action that cannot legally be taken to collect a con-sumer debt.

169.    Midland, by and through its attorneys and agents, violated the FDCPA in that Midland actually took action that cannot legally be taken to collect a consumer debt.

170.    Midland, by and through its attorneys and agents, violated the FDCPA in that Midland falsely represents to consumers that consumer accounts have been acquired by innocent purchasers for value.

171.    Midland, by and through its attorneys and agents, violated the FDCPA in that Midland attempted to collect amounts that are not expressly authorized by the agreement creating the debt and permitted by law.

172.    Midland, by and through its attorneys and agents, violated the FDCPA in that Midland sues consumers in a county other than the county in which the consumer resides.

173.    Johnson, Roarty, and each member of the Sub-Class suffered damages as a result of Midland's violation of the FDCPA.

174.    The FDCPA provides for actual damages.

175.    The FDCPA provides for statutory damages in addition to actual damages.

176.    The FDCPA provides for reasonable attorneys' fees.

**WHEREFORE**, the Plaintiff and the Sub-Class members pray that this Court:

**[1]**    Certify this civil action as a class action with Johnson and Roarty as the Sub-Class representative and their attorneys as counsel on behalf of the Sub-Class;

**[2]**   Enter judgment in favor of the Sub-Class and against Midland in such amount as to be determined at trial and for the purposes of a sum certain, subject to further discovery as to the size of the Class, the amount sought on behalf of the Class is twenty million dollars ($20,000,000.00);

**[3]**   Enter judgment in favor of the Sub-Class against Midland for statutory damages in the amount allowed by the FDCPA of five hundred thousand dollars ($500,000.00);

**[4]**   Award reasonable attorneys' fees, litigation expenses, and the costs of this civil action; and

**[5]**   Provide such other relief as the Court deems appropriate.

## COUNT VI

### UNJUST ENRICHMENT

#### *(CLAIM ON BEHALF OF NAMED PLAINTIFFS AND CLASS)*

177.   Plaintiffs adopt by reference the allegations contained in paragraphs 1 through 176 of this Class Action with the same effect as if herein fully set forth.

178.   As set forth above, Midland acquired consumer debts, collected payments, and obtained judgments to which they were not entitled by law, which conferred a substantial benefit on Midland.

179.   Midland was aware of, and had knowledge of, this substantial benefit.

180.   By doing so, Midland has come into the possession of money in the form of payments that it had, and has, no right to at law or in equity.

181.   It would be inequitable for Midland to retain any such monies to which it had no legal right.

182.   As a consequence, Johnson, Roarty, and the members of the Class have been damaged.

**WHEREFORE**, the Plaintiff and the Sub-Class members pray that this Court:

[1]   Certify this civil action as a class action with Johnson and Roarty as the Class representative and their attorneys as counsel on behalf of the Class;

[2]   Enter judgment in favor of the Class and against Midland in such amount as to be determined at trial and for the purposes of a sum certain, subject to further discovery as to the size of the Class, the amount sought on behalf of the Class is twenty million dollars ($20,000,000.00);

[3]   Award reasonable attorneys' fees, litigation expenses, and the costs of this civil action; and

[4]   Provide such other relief as the Court deems appropriate.

For the Named Plaintiffs, Class and Sub-Class:

By:   */s/ Scott C. Borison*
Scott C. Borison, Esq.
Federal Bar No. 22576
Legg Law Firm, LLC
5500 Buckeystown Pike
Frederick, Maryland  21703
Telephone:  301.620.1016
Facsimile:  301.620.1018
E-mail:  borison@legglaw.com

By:    */s/ Peter A. Holland*
Peter A. Holland, Esq.
Federal Bar No. 10866
The Holland Law Firm, P.C.
Suite 21 – Clock Tower Place
Annapolis, Maryland  21403
Telephone:  410.280.6133
Facsimile:  410.280.8650
E-mail:  peter@hollandlawfirm.com

By:    */s/...Michael Gregg Morin*
Michael Gregg Morin, Esq.
Federal Bar No. 15399
*Of Counsel to:*  The Holland Law Firm, P.C.
Suite 21 – Clock Tower Place
Annapolis, Maryland  21403
Telephone:  410.280.6133
Facsimile:  410.280.8650
E-mail:  mikemorin@msn.com

## JURY DEMAND

Johnson and Roarty, individually and on behalf of the Class and Sub-Class, demand a jury trial in this action.

For the Named Plaintiffs, Class, and Sub-Class:


By:     */s/ Scott C. Borison*
        Scott C. Borison, Esq.
        Federal Bar No. 22576

        */s/ Peter A. Holland*
        Federal Bar No. 10866

        */s/ Michael Gregg Morin*
        Federal Bar No. 15399

**CERTIFICATE OF SERVICE**

I certify that on 23 November 2009, I served a copy of the foregoing First Amended Complaint by mail, first-class postage pre-paid, to:

James P. Ulwick, Esq.
Any E. Askew, Esq.
Kramon & Graham, P.A.
Suite 2600
One South Street
Baltimore, Maryland  21202


By:   */s/ Michael Gregg Morin*
      Federal Bar No, 15399