IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

DELVELL JOHNSON, et al.                    *

     Plaintiffs,                         *

v.                                          *        Case No.: 1:09-cv-02391-RDB

MIDLAND FUNDING, LLC                        *

     Defendant.                          *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

Defendant, Midland Funding, LLC ("Defendant" or "Midland"), by its undersigned counsel, files this Reply in further support of its Motion to Dismiss the First Amended Complaint ("Complaint") of Plaintiffs Delvell Johnson ("Johnson") and Denise Roarty ("Roarty") pursuant to Fed. R. Civ. P. 12(b) or, in the alternative, moves for summary judgment pursuant to Fed. R. Civ. P. 56.

## I.   INTRODUCTION.

In an effort to cloud the legal issues and mask the deficiencies in their First Amended Complaint, Plaintiffs pack their opposition with jury arguments and sarcasm. Although their colorful arguments and descriptions attempt to create a sympathetic narrative involving "good guys" and "bad guys," in the end, Plaintiffs' opposition is

grounded on no more than just that- - rhetoric.[1]  The <u>facts</u> of this case make clear that

Plaintiffs' claims fail as a matter of law and Midland's motion should be granted.

## II.    ANY DISCUSSION OF THE REGULATORY ACTIONS INVOLVING MIDLAND IS IRRELEVANT TO THE INSTANT CASE.

As Plaintiffs' concede, <u>subsequent</u> to filing their lawsuit, the Maryland State

Collection Agency Licensing Board in the Office of the Commissioner of Financial

Regulation issued press releases and various orders relating to Midland and others.

Plaintiffs pretend that they are at a "complete loss" (*see* Plaintiffs' Opp. at 13, fn 5) to

understand why Midland did not raise and discuss in its motion unrelated activities that

occurred *after* the alleged wrongful conduct and *after* the filing of the Complaint in this

case.   As mentioned in Midland's Motion, it is well established that activities and

settlement agreements that occur *after* the filing of a complaint and incident at issue are

not relevant or probative to issues of liability or notice and are inadmissible. *See Kloepfer*

*v. Honda Motor Co., Ltd.*, 898 F.2d 1452, 1456-57 (10th Cir. 1990).  Moreover, Midland

did not admit to any of the alleged violations in the Settlement Agreement, nor did it

agree with the Agency's positions set forth in the Agreement.  Those positions, stated

---

[1]      Multiple courts have noted the significant gap between the lofty language of the FDCPA plaintiffs and the reality of their litigation tactics:

> Ironically, it appears that it is often the extremely sophisticated consumer who takes advantage of the civil liability scheme defined by [the FDCPA], not the individual who has been threatened or misled.  The cottage industry that has emerged does not bring suits to remedy the "widespread and serious national problem" of abuse that the Senate observed in adopting the legislation, 1977 U.S.C.C.A.N. 1695, 1696, nor to ferret out collection abuse in the form of "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." *Id.* Rather the inescapable inference is that the judicially developed standards have enabled a class of professional plaintiffs.

*Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009) (quoting *Jacobson v. Healthcare Fin. Servs. Inc.*, 434 F. Supp. 2d 133, 138-39 (E.D.N.Y. 2006)).

after all of the events in question in this case, are irrelevant.  This is particularly so where the positions represent a change of the Agency's position after the events alleged in this case occurred.

## III.   MIDLAND IS NOT A DEBT COLLECTOR UNDER ANY STATUTORY AUTHORITY.

Without citing to any case law, Plaintiffs state that Midland is a "collection agency," a "collector," a "debt collector" and that its principal business is the collection of consumer debts. Plaintiffs apparently believe that if they ignore case precedent and repeat their claim enough times, it will be true.  However, a review the pertinent statutory authority, the case law and Plaintiffs' deficient pleadings, make it apparent that their allegations are not true.

### A.   Midland is not a collection agency or collector under Maryland authority.

According to Plaintiffs, Midland is a collection agency pursuant to Md. Code Ann., Bus. Reg. § 7-101(c)(1)(ii) and was required to be licensed in order to conduct business in Maryland.  Because it was not licensed, Plaintiffs contend, every collection action by Midland is a violation of the Maryland Consumer Debt Collection Act ["MCDCA"] and the Maryland Consumer Protection Act ["MCPA"].  In response, Midland asserts that it does not engage in collection activity, and therefore does not fall under the plain language of the statute.

Plaintiffs attach to their Opposition the legislative history of HB 1324 in support of their position that Maryland includes in its definition of "collection agency" debt purchasers who do not engage in debt collection activities.  But the analyses and letters

3

attached to the proposed bill clearly show that the "loophole" that the legislature intended to close involved those entities that purchase consumer debt after it was in default *and* engage in collection activity. *See* Ex. 2 to Plaintiff's Opposition at 8, 17.  Prior to this bill, if an entity owned a consumer debt (regardless of how it was acquired) and then sought to collect on the debt like traditional collection agencies, those entities were likened to creditors and were exempt from the licensing statute. *See* Ex. 2 to Plaintiff's Opposition at 17.  In light of the evolution of this new industry where businesses- including collection agencies- purchased a debt from a creditor, became the new owners of the debt *and* then proceeded to engage in debt collection activities, the Legislature amended §7-101.  *See id.* Consistent with the goal of the statute, the Legislature wanted to regulate those entities that were engaged in abusive practices.  As with the FDCPA, the focus of the statute is on the conduct of the actor.

Indeed, the Legislative history that Plaintiffs offer for the Court's consideration (including the Testimony of Commissioner Turnbaugh) is fully consistent with the position set forth in the Mack opinion letter sent *on behalf* of Commissioner Turnbaugh. *See* Ex. 2 to Plaintiffs' Opposition.  Such an opinion letter, sent at the same time as the legislation on behalf of the authority charged with enforcing such statute, is persuasive and is entitled to the Court's consideration when determining the meaning of the statute. *See United States v. Mead,* 533 U.S. 218, 234-35 (2001); *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944).[2]  Plaintiffs counter by citing to the Final Settlement Agreement

---

[2]     As Midland pointed out in its opening Motion, the Mack letter is entitled to be viewed as persuasive authority in connection with the meaning of the term debt collector. *See* Midland's Motion at 9, fn. 3.  Plaintiffs attempt to distract this Court with a meaningless argument that the Mack letter should not receive any special

(Exhibit 1 to Plaintiffs' Opposition) from December 2009.  Unlike the Mack Letter, however, the "positions" set forth in a litigation related document, signed by a different Commissioner, compiled over three years after the passing of the amendment (and after this lawsuit was filed) are entitled to no weight.  Plaintiffs fail to cite to any authority that stands for the proposition that statements made by an agency in litigation are akin to opinion letters and therefore have the power to persuade.

Midland does not engage in any debt collection activity or practices that are contemplated by the statute.  Rather, Midland purchases debt and then, according to the Complaint, retains the services of a licensed debt collection agency that engages in debt collection activity.  Midland is likewise not a "collector" under Md. Code Ann., Com. Law § 14-201(b).  In response to Midland's argument that it engages in no debt collection activity as proscribed by Md. Code Ann., Com. Law § 14-202, Plaintiffs respond that Midland files lawsuits and, under Maryland law, that is debt collection activity.  However, Plaintiffs cite to no case law supporting such a statement.

Further, the plain language of §14-202 describes the type of debt collection activity that is at issue under the MCDCA.  Section 14-202 states that in collecting or attempting to collect an alleged debt, a collector may not:

(1) Use or threaten force or violence;
(2) Threaten criminal prosecution, unless the transaction involved the violation of a criminal statute;
(3) Disclose or threaten to disclose information which affects the debtor's

---

deference.  This is a "straw man" argument.  Midland has never contended that the Mack Letter was entitled to be viewed as anything other than persuasive authority.  Plaintiffs' raise additional straw men in their sections addressing creditors; whether a lawyer who regularly engages in debt collection activity may be considered a debt collector; and case law discussing threats of litigation that cannot lawfully be taken. Plaintiffs' Opposition at 16, 24-29.

reputation for credit worthiness with knowledge that the information is false;

(4) Except as permitted by statute, contact a person's employer with respect to a delinquent indebtedness before obtaining final judgment against the debtor;

(5) Except as permitted by statute, disclose or threaten to disclose to a person other than the debtor or his spouse or, if the debtor is a minor, his parent, information which affects the debtor's reputation, whether or not for credit worthiness, with knowledge that the other person does not have a legitimate business need for the information;

(6) Communicate with the debtor or a person related to him with the frequency, at the unusual hours, or in any other manner as reasonably can be expected to abuse or harass the debtor;

(7) Use obscene or grossly abusive language in communicating with the debtor or a person related to him;

(8) Claim, attempt, or threaten to enforce a right with knowledge that the right does not exist; or

(9) Use a communication which simulates legal or judicial process or gives the appearance of being authorized, issued, or approved by a government, governmental agency, or lawyer when it is not.

Clearly, being a plaintiff in a lawsuit is not contemplated by the statute as an abusive debt practice.

### B.    Midland is not a debt collector under the Fair Debt Collection Practices Act ["FDCPA"].

"The FDCPA protects consumers from the abusive and deceptive practices employed by some debt collectors." *See Spencer v. Hendersen-Webb, Inc.*, 81 F. Supp. 2d 582, 590 (D. Md. 1999). The focus of the act is on the conduct and activity of debt collection, as made clear by the express statutory purpose, which is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).    Plaintiffs concede in their opposition that "consumer

6

protection statutes related to the collection of alleged consumer debt are about debt collection methods, not about debt." Plaintiffs' Opposition at 10.

Similarly, the term "debt collector," as defined in the statute, focuses on the *activity* of debt collecting. *See* 15 U.S.C. §1692a(6).  In pertinent part, under the statute, the term debt collector means any person 1) "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," or 2) "who regularly collects or attempts to collect, directly or indirectly debts owed or due or asserted to be owed or due *another*." 15 U.S.C. §1692a(6) (emphasis added).  *See also Dorsey v. Morgan*, 760 F. Supp. 509, 513 (D. Md. 1991).  To be held liable under the FDCPA, Midland must, as a threshold requirement, fall within the Act's definition of "debt collector." *See Heintz v. Jenkins,* 514 U.S. 291, 294 (1995).

In order to be a debt collector, the entity *must* engage in debt collecting conduct. Merely being the owner of a debt that was purchased after it was in default and not engaging in any debt collecting conduct does not make the owner of the debt a debt collector.  Further, if an entity retains the services of an licensed collector to collect on the debt, mere ownership of the debt is insufficient to make it a debt collector.

The case of *Scally v. Hilco Receivables, LLC*, 392 F. Supp. 2d 1036 (N.D. Ill. 2005) is directly on point.  In *Scally,* the plaintiff sued Hilco Receivables, LLC (Hilco) and MRS Associates, Inc. (MRS) for violations of the FDCPA. Hilco acquired the plaintiff's debt after she defaulted and outsourced the activity of debt collection to MRS. The court considered the argument that assignees of debt already in default at the time of assignment should be considered debt collectors- the same argument advanced by

plaintiffs-  and that, at first blush, Hilco appeared to fall into this category. *See Scally*, 392 F. Supp. 2d at 1037.  However, the court went on to say,

> Yet at least in the conventional sense, Hilco did not act directly to collect Scally's debt: Hilco never contacted Scally to collect the debt nor did Hilco mail the allegedly offending collection letter.  Rather, Hilco outsourced the activity of debt collection to co-defendant MRS, which mailed the letter that is the basis of Scally's complaint.

*Id*.  The issue for the court was therefore whether Hilco acted indirectly when it contracted with MRS for the collection of the debt.

The court held that there were no facts sufficient to establish that Hilco controlled the mechanisms or the content of MRS's contact with the debtor. *Id*. at 1040.  The court also found that there was no evidence of interdependence between Hilco and MRS.  *Id*. at 1040-41.  As a result, the court declined to hold Hilco responsible for the actions of MRS and likewise found that Hilco did not act indirectly when it retained MRS to collect the debt. *Id*. at 1041.

Plaintiffs argue that Midland's business of purchasing consumer debt is an obvious precursor to the collection of consumer debt.  Plaintiffs' Opposition at 19.  Yet it is beyond dispute that the business and the only activity of Midland is the purchase of consumer debt.  Because Midland is not in the business of collection, the services of Mann Bracken are used. Mann Bracken is in the business of collecting debt.  Plaintiffs have alleged nothing more than that Midland retained the services of Mann Bracken that permitted Mann Bracken to engage in collection activities on its behalf.  Even if this Court were to assume the truth of this allegation, focusing on the conduct and the activity

8

of Midland, it is clear that its business activity is <u>not</u> the collection of consumer debts, either directly or indirectly.

Additionally, Plaintiffs have not asserted that Defendant "personally used or directed the use of interstate commerce instrumentalities or the mail to collect the acknowledged debt from Plaintiff in accordance with the statutory definition of debt collector." *Boccone v. American Express Co.*, 2007 WL 2914909 at *5 (D. Md. Oct. 4, 2007). Rather, according to the allegations in the complaint, Midland took no collection action itself, but rather simply referred Plaintiffs' account to collection.  This alone does not make Midland a debt collector *See id.* at *6.

### C.	Filing a lawsuit does not constitute an abusive debt collection practice.

Confronted with the lack of debt collection activity by Midland, Plaintiffs suggest that using lawful judicial process is an abusive practice.  However, the filing of a lawsuit is an authorized method for collecting a debt. *See Krawczyk v. Centurion Capital Corp.*, 2009 WL 395458, at *9 (N.D. Ill. Feb. 18, 2009).  "'[T]he filing of a debt collection lawsuit does not have the natural consequence of harassing, abusing or oppressing the debtor.  Any attempt to collect a defaulted debt will be unwanted but employing the court system cannot be said to be an abusive tactic under the FDCPA.'" *See id*. (quoting *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330-32 (6th Cir. 2006). *See also Deere v. Javitch, Block and Rathbone, LLP*, 413 F. Supp. 2d 886, 890 (S.D. Ohio 2006) (finding that filing a civil debt collection lawsuit is not conduct to which FDCPA Section 1692d is addressed).  Additionally, even if an affidavit filed in connection with a state court pleading contained incorrect information, such conduct is not abusive to the debtor. *See*

9

*Hartman v. Asset Acceptance Corp.* 467 F. Supp. 2d 769, 778 (S.D. Ohio 2004).  "[T]he 'natural consequence' of an affidavit filed in a lawsuit is to bring the issue to court for resolution, not to 'harass, oppress, or abuse'" the debtor.  *Id*. at 778.

Plaintiff Johnson makes conclusory allegations regarding the quality and content of the affidavit that was filed in the state court action against him.  *See* Complaint at 27-28.  No such claim is made by Plaintiff Roarty.  Specifically, Plaintiff Johnson alleges the following:

> The affidavit submitted to the District Court of Maryland in the Johnson state case was false and was known to Midland's attorneys and agents to be false when it was presented to the District Court.  Among other issues, the affidavit was produced on a "production line" of hundreds of affidavits and was then executed by an agent of Midland who had no personal knowledge of facts addressed by the affidavit.

Complaint at ¶ 28.  Even if this Court were to assume for purposes of this motion that Plaintiff Johnson's allegations are true, this argument assumes that the FDCPA controls the content of pleadings and filings in the state court.  As noted by the Seventh Circuit, "it is far from clear that the FDCPA controls the contents of pleadings filed in state court." *Beler v. Blatt Hasenmiller Leibsjker & Moore,* 480 F.3d 470, 473 (7th Cir. 2007).

In *Jenkins v. Centurion Capital Corp.*, 2009 WL 3414248 (N.D. Ill. Oct. 20, 2009), the Illinois federal court confronted similar allegations relating to a purportedly false affidavit.  In *Jenkins*, the plaintiff argued that the debt collector (whose status, unlike here, was not in dispute) violated §§1692e and 1692f by filing a state court action knowing that it would be unable to prove the allegations in the suit.  *Id*. at *2. Additionally, the plaintiff alleged that the debt collector attached to its state court

complaint an affidavit that contained false statements. *Id.* at *3.   Similar to Plaintiff Johnson's allegations, the *Jenkins* plaintiff stated that the affiant "would sign hundred of similar affidavits on an average day, did not know who prepared the affidavits she signed or what records that person used to insert the information concerning Plaintiff's account into the affidavit she signed." *Id*.

The *Jenkins* court found the plaintiff's arguments unpersuasive. The court pointed out that the plaintiff had failed to specifically identify the false statements in the affidavit. *Id.*  Plaintiff Johnson likewise has failed to identify for this Court what statements in the affidavit were false. Plaintiff Johnson's Complaint also does not allege that he did not in fact owe a balance on his defaulted Citibank account.

Plaintiff provides this Court with a lengthy discussion of *Heintz v. Jenkins*, 514 U.S. 291 (1995).  The opening line of the opinion states: "the issue before [the Court] is whether the term debt collector in the [FDCPA] applies to a lawyer who "regularly," *through litigation*, tries to collect consumer debts." *Id*. at 292 (emphasis in original).  The focus of *Heintz* thus was not whether a debt buyer, who engages the services of a lawyer (who is a debt collector), who in turn files a lawsuit on the debt buyers behalf.  Plaintiffs have cited no authority for the proposition that the *Heintz* holding reaches behind the debt collector lawyer to the client.[3]

---

[3] After the 1995 United States Supreme Court decision in *Heintz,* in 1996, Congress amended §1692e(11) to specifically state that a "formal pleading filed in a legal action" is exempt from the communication requirements found in § 1692e(11).

## IV.   PLAINTIFFS HAVE FAILED TO PLEAD SUFFICIENT FACTS THAT MANN BRACKEN WAS MIDLAND'S AGENT.

Because Plaintiffs are unable to set forth sufficient facts that Midland is a debt collector and engages in debt collection activity that is in violation of the pertinent consumer statutes, they attempt to hold Midland vicariously liable for the acts of Mann Bracken.   However, Plaintiffs have failed to plead sufficient facts to establish that Midland should be vicariously liable for any alleged wrongful conduct of Mann Bracken. Under *Maryland* law, in the absence of special circumstances, a collection agency is an independent contractor. *See Spencer v. Hendersen-Webb, Inc.*, 81 F. Supp. 2d 582, 592 (D. Md. 1999).  These special circumstances include pleading facts to show that Midland and Mann Bracken are a single economic enterprise or have interdependence. *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1142-43 (N.D. Ill. 1998).  Plaintiffs have failed to do so and cannot do so.

Plaintiffs' attempt to hold Midland liable for the alleged acts of Mann Bracken is over-reaching and not consistent with the stated purpose of the FDCPA or the MCDCA. As stated by the United States Court of Appeals for the Sixth Circuit:

> We do not think it would accord with the intent of Congress, as manifested in the terms of the Act, for a company that is *not* a debt collector to be held vicariously liable for a collection suit filing that violates the Act only because the filing attorney is a "debt collector." Section 1692k imposes liability only on a "debt collector who fails to comply with [a] provision of this subchapter…." 15 U.S.C. § 1692k (a).  The plaintiffs would have us impose liability on non-debt collectors too.  This we decline to do.

*Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996). *See also Caron v. Charles E. Maxwell, PC*, 48 F. Supp. 2d 932, 936 (D. Ariz. 1999) ("Although the

{\\johnson.docxv1 }

FDCPA is silent on the issue of vicarious liability, courts have held that the client of an attorney working as a 'debt collector' as defined in §1692a(6) of the FDCPA is only liable for his attorney's violations if both the attorney and the client are debt collectors within the meaning of the statute.").

## V.   PLAINTIFFS' REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF IS UNSUPPORTABLE.

In their Opposition, Plaintiffs claim that they are not seeking a declaratory and injunctive relief pursuant to the FDCPA, but rather are seeking it pursuant to 28 U.S.C. §2201(a),[4] Md. Code Ann., Cts. & Jud. Proc. §3-203 and Fed. R. Civ. Proc. 23(b).  As an initial matter, the section cited by Plaintiffs to the Maryland Code deals with the venue provision when filing a petition for arbitration.[5]  Plaintiffs obviously cannot rely upon that statutory provision for requesting equitable relief.

As it relates to the named Plaintiffs, there does not exist an "actual case or controversy" that would require this Court to determine the rights as between the Plaintiffs and Midland.  The relief that is requested is to determine the rights of Midland and the State of Maryland.  The Plaintiffs also request that this Court order that judgments be vacated and that liens be released.  As Plaintiffs admit, no judgment has been entered against either of them, much less a lien.  *See* Plaintiff's Opposition at 21.

---

[4]     28 U.S.C. § 2201 states "In a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

[5]     Midland assumes that Plaintiffs meant to cite Md. Code Ann., Cts. & Jud. Proc. §3-406, which states, "Any person interested under deed, will trust, land patent, written contract, or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, administrative rule or regulation, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, administrative rule or regulation, land patent, contract or franchise and obtain a declaration of rights, status, or other legal relations under it."

{\\johnson.docxv1 }

Accordingly, Plaintiffs Johnson and Roarty have no standing to assert their claims for equitable relief and the claims must therefore be dismissed.  *See Alice v. Medrano*, 416 U.S. 802, 829-30 (1974) ("a named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs; it bears repeating that a person cannot predicate standing on injury which he does not share.  Standing cannot be acquired through the back door of a class action.").

Although unclear, Plaintiffs also seem to agree that the *Rooker- Feldman* doctrine would prohibit interference with state court proceedings and judgments, and as a result preclude any relief that requested same. Plaintiffs' Opposition at 21.  The *Rooker-Feldman* doctrine would not apply to a request for money damages as a result of any alleged wrongful conduct of Midland. However, Plaintiffs have not requested money damages in Counts I and II.  Accordingly, the Court lacks subject matter jurisdiction and the claims should be dismissed.

## VI.   <u>PLAINTIFFS CONCEDE THEY FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT.</u>

As Plaintiffs concede they have no standing to bring a claim for unjust enrichment (Plaintiffs' Opposition at fn 3), judgment in favor of Midland is appropriate.

## VII.   <u>CONCLUSION</u>

WHEREFORE, Midland respectfully requests that this Court GRANT its Motion to Dismiss for failure to state a claim and dismiss with prejudice Counts I-VI of the Complaint.  Alternatively, as there is no dispute of material fact, Midland respectfully

requests that this Court GRANT its Motion for Summary Judgment and enter judgment in favor of Midland as to Counts I-VI.

Respectfully submitted,

_____/s/ James P. Ulwick_____
James P. Ulwick     (Bar No. 00536)
Amy E. Askew     (Bar No. 26709)
Kramon & Graham, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
Tel: (410) 752-6030
Fax: (410) 539-1269
e-mail: julwick@kg-law.com
e-mail: aaskew@kg-law.com
*Counsel for Defendant,*
*Midland Funding, LLC*